82 FR 39614-02, 2017 WL 3581256(F.R.)
NOTICES
DEPARTMENT OF JUSTICE
Drug Enforcement Administration
[Docket No. 17-17]

**Arnold E. Feldman**, M.D.; Decision and Order

Monday, August 21, 2017

**\*39614** On January 24, 2017, the Assistant Administrator, Diversion Control Division, issued an Order to Show Cause to **Arnold E. Feldman**, M.D. (Respondent), of Baton Rouge, Louisiana. The Show Cause Order proposed the revocation of Respondent's DEA Certificate of Registration No. BF4179203, and the denial of his application for a registration, on the ground that he "do[es] not have authority to handle controlled substances in the State of Louisiana, the [S]tate in which [he is] registered . . . and [is] applying" for registration. Show Cause Order, at 1.

As to the jurisdictional basis for the proceeding, the Show Cause Order alleged that Respondent is "registered . . . as a data-waived/100 practitioner in [s]chedules II-V pursuant to [Registration No.] BF4179203 with a registered address at 505 East Airport [Blvd.], Baton Rouge, Louisiana," and that this registration does not expire until "September 30, 2018." Id. The Order also alleged that "[o]n July 31, 2013, [Respondent] applied for a separate . . . [r]egistration as a practitioner in [s]chedules II-V with a registered address of 505 East Airport [Blvd.], Baton Rouge, Louisiana." Id.

As to the substantive ground for the proceeding, the Show Cause Order alleged that Respondent's "[a]uthority to prescribe and administer controlled substances in the State of Louisiana was suspended effective October 19, 2016." Id. at 2. The Order then asserted that as a consequence of Respondent's "lack of authority to handle controlled substances in the State of Louisiana," Respondent's registration is subject to revocation and his application must be denied. Id.

The Show Cause Order notified Respondent of his right to request a hearing on the allegation or to submit a written statement while waiving his right to a hearing and the procedure for electing either option. Id. (citing 21 CFR 1301.43). In addition, the Order notified Respondent of his right to submit a corrective action plan pursuant to 21 U.S.C. 824(c)(2)(C). Id. at 2-3.

On February 23, 2017, Respondent requested a hearing on the allegation. Letter from Respondent to Hearing Clerk, Office of Administrative Law Judges (Feb. 23, 2017). The same day, the matter was assigned to Administrative Law Judge Charles Wm. Dorman (hereinafter, ALJ), who issued an order (also on Feb. 23) directing the Government to file evidence supporting the allegation by March 10, 2017 at 2 p.m., as well any motion for summary disposition. Briefing Schedule For Lack Of State Authority Allegations, at 1. The ALJ's order also provided that if the Government moved for summary disposition, Respondent's opposition was due by March 24, 2017 at 2 p.m. Id.

The next day, Respondent emailed the ALJ's law clerk seeking a continuance in order to engage counsel. Email from Respondent to ALJ's law clerk (Feb. 24, 2017). Respondent explained that he was seeking the continuance because "I have court cases pending in multiple jurisdictions including a Mar 16 hearing, a Mar 20 hearing in Mississippi and appeals in Louisiana and Mississippi and California." Id. Respondent subsequently sought " 'a continuance of at least 120 days' due to constant court appearances in Louisiana, Mississippi, and California." Order Denying The Respondent's Request For Continuance, at 1 (Feb. 27, 2017). Noting that his Briefing Schedule order "provided the Respondent [with] a date to respond, if the government files such a motion," the ALJ reasoned that "[b]ecause the government ha[d] not filed a motion for summary disposition . . . Respondent's request . . . is premature." Id.

**Arnold E. Feldman, M.D.; Decision and Order, 82 FR 39614-02**

On March 2, 2017, the Government filed its Motion for Summary Disposition. As support for its motion, the Government provided: (1) A copy of Respondent's registration; (2) his July 30, 2013 application for registration as a hospital/clinic; (3) the Decision and Order of the Louisiana State Board of Medical Examiners (Aug. 15, 2016) which ordered the suspension of his medical license for a period of two years to begin 30 days from the date of the Order, and a subsequent Order of the Board (Sept. 13, 2016), which extended the commencement of the suspension until October 14, 2016; (4) a copy of a judgment issued by the Civil District Court for the Parish of Orleans which stayed the Board's Order from October 14, 2016 through October 19, 2016 and further ordered the Board to "show cause" as to "why the stay should not continue"; and (5) a Declaration of a Diversion Investigator as to various matters, including that the Board's Order had gone into effect on October 19, 2016. Mot. for Summ. Disp., at Appendix A-E.

On March 10, 2017, counsel for Respondent entered a notice of appearance. On March 23, 2017, Respondent filed his Reply to the Government's Motion.

Therein, "Respondent acknowledge[d] that his license to practice medicine in . . . Louisiana has been suspended in accordance with the . . . Board of Medical Examiners' Order." Resp. Reply, at 1. Respondent contended, however, "that there are material questions of fact and law that require resolution in a plenary, evidentiary proceeding."

According to Respondent, these issues were that he possesses "an active and unrestricted" license to practice medicine in Alabama and "a full and unrestricted Alabama Controlled *39615 Substance Certificate." Id. at 2. Respondent argued that "none of the cases cited by the Government" address the situation "where a physician has lost authority to practice in one state, while retaining unrestricted authority in another." Id. at 3. He also argued that the Agency's longstanding rule that a practitioner must possess authority under the laws of the State in which he engages in professional practice "is based on the indiscriminate intermingling of" 21 U.S.C. 823 and 824, "each of which deals with different aspects of the control and enforcement authority to dispense controlled substances." Id. at 3. He further contended that while section 823 mandates that the Attorney General register the applicant if he "is authorized to dispense controlled substances under the laws of the State in which he practices," "[t]he term 'practitioner' does not appear in" section 824 and the latter provision "does not speak to a physician's authorization to practice or dispense under the laws of the state in which the registrant practices." Id. at 4.

In Respondent's view, section 824 authorizes revocation "only if the registrant is no longer authorized by State law to engage in the dispensing of controlled substances . . . under state law." Id. at 4-5. He also maintained that "[t]he fact that Congress employed the term 'practitioner' in" section 823(f) but not in section 824 "is a clear indication that it did not intend to authorize revocation or suspension of a [registration] where a registrant has continued to maintain authority to practice and dispense under the laws of any state." Id.; see also id. at 5 & n.16 ("Where Congress includes particular language in one section of a statute but omits it in another . . . it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting Keene Corp. v United States, 508 U.S. 200, 208 (1993) (other citation omitted)).

Finally, Respondent contended that "[t]he Government's indiscriminate intermingling of [sections 823 and 824], and its misinterpretation of 21 U.S.C. 824(a)(3) amount to a violation of [his] constitutional right to travel." Id. at 6. He explained that "[t]heoretically, [he] should be able to pack up and remove himself and his practice from Louisiana to . . . Alabama, where he is authorized to practice medicine and dispense controlled substances. But[] his constitutional right to do so is impaired by the Government's misinterpretation of its authority to revoke" his registration. Id.

On April 3, 2017, the ALJ granted the Government's Motion. The ALJ found that "Respondent conceded in his Reply that his Louisiana medical license is currently suspended" and that "it is undisputed that . . . Respondent lacks state authorization to handle controlled substances in Louisiana, where [he is] registered, and where [he] has applied for an additional" registration. R.D. 6. Because Respondent is registered in Louisiana, the ALJ found it irrelevant that Respondent holds a license to practice medicine in Alabama. Id. at 4. The ALJ noted that "both the CSA's 'definition of

**Arnold E. Feldman, M.D.; Decision and Order, 82 FR 39614-02**

the term "practitioner" and the registration provision applicable to practitioners make clear that a practitioner must be currently authorized to dispense controlled substances by the State in which he practices in order to obtain and maintain a registration,'" and that Agency's interpretation has been upheld by the Fourth Circuit. Id. (quoting Rezik A. Saqer, 81 FR 22122, 22125 (2016) and citing Hooper v. Holder, 481 Fed. App'x 826 (4th Cir. 2012)). The ALJ further reasoned that "Respondent's analysis is counter to the way the DEA has interpreted the CSA for nearly forty years." Id. at 5 (citing Saqer, 81 FR at 22126 (citing Frederick Marsh Blanton, 43 FR 27616 (1978))).

The ALJ also rejected Respondent's contention that the Agency's interpretation impairs his constitutional right to travel. Id. at 5-6. The ALJ noted that under DEA regulations, "'[a] separate registration is required for each principal place of business.'" Id. at 5 (quoting 21 CFR 1301.12(a)). The ALJ also noted that in 2006, the Agency issued a final rule which "clarif[ied] that a practitioner must obtain a separate DEA registration for each state in which he or she practices" and that "'[j]ust as a license to practice medicine in one State does not authorize a practitioner to practice in any other State, a DEA registration based on a particular State's license cannot authorize dispensing controlled substances in another State.'" Id. at 6 (quoting Clarification of Registration Requirements for Individual Practitioners, 71 FR 69478, 69479 (2006) and citing Joe W. Morgan, 78 FR 61961, 61965 n.13 (2013)). The ALJ thus explained that "Respondent is able to pack up and remove himself and his practice from Louisiana to Alabama—he just cannot dispense or prescribe controlled substances there unless he first obtains a separate DEA registration for his Alabama location in accordance with 21 CFR 1301.12(a)." Id. The ALJ thus recommended that I revoke Respondent's registration and deny any pending applications. Id. at 7.

Respondent filed Exceptions to the ALJ's Recommended Decision. On May 1, 2017, the ALJ forwarded the record to me for Final Agency Action.

Having considered the record and Respondent's Exceptions, I reject Respondent's various contentions and adopt the ALJ's Recommended Decision. I will therefore also adopt the ALJ's recommendation that I revoke Respondent's registration and deny his application. I make the following findings.

**Findings of Fact**

Respondent is the holder of DEA Certificate of Registration No. BF4179203, pursuant to which he is authorized to dispense controlled substances in schedules II through V as a practitioner, at the registered address of: "The Pain Treatment CTR of B.R.," 505 E. Airport Blvd., Baton Rouge, Louisiana. Mot. for Summ. Disp., Appendix A. Under this registration, Respondent also holds an identification number (XF4179203), id., pursuant to which he is authorized to dispense or prescribe schedule III through V "narcotic controlled substances which have been approved by the Food and Drug Administration . . . specifically for use in maintenance or detoxification treatment" to up to 100 patients. 21 CFR 1301.28(a). Respondent's registration (and identification number) do not expire until September 30, 2018. Mot. for Summ. Disp., Appendix A.

On July 30, 2013, Respondent submitted an application to register an entity known as "First Choice Surgery Center of BA" as a Hospital/Clinic, at the same address as above. Id. Appendix B. This application remains pending before the Agency.

Respondent also holds a medical license issued by the Louisiana State Board of Medical Examiners. However, on August 15, 2016, the Board suspended his medical license for a period of two years; this Order became effective on or about October 19, 2016.[FN1] See Mot. for Summ. Disp., Appendices B & E; Resp.'s reply, at 1. Accordingly, I find that Respondent *39616 currently lacks authority to dispense controlled substances under the laws of the State of Louisiana.

**Discussion**

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.

**Arnold E. Feldman, M.D.; Decision and Order, 82 FR 39614-02**

Pursuant to 21 U.S.C. 824(a)(3), the Attorney General is authorized to suspend or revoke a registration issued under section 823 of the Controlled Substances Act (CSA), "upon a finding that the registrant ... has had his State license ... suspended [or] revoked ... by competent State authority and is no longer authorized by State law to engage in the ... dispensing of controlled substances." With respect to a practitioner, DEA has long held that the possession of authority to dispense controlled substances under the laws of the State in which a practitioner engages in professional practice is a fundamental condition for obtaining and maintaining a practitioner's registration. See, e.g., James L. Hooper, 76 FR 71371 (2011), pet. for rev. denied, 481 Fed. Appx. 826 (4th Cir. 2012); Frederick Marsh Blanton, 43 FR 27616 (1978).

Respondent acknowledges that the Agency's precedents "do indeed reveal a consistent [and in his view] uncritical repetition of th[is] claim, to an extent ... that the proposition has come to attain near sacrosanct status." Exceptions, at 2. As he did before the ALJ, he contends that the Agency's rule "is based on the indiscriminate intermingling of" the registration requirements of section 823 and the suspension/revocation authority of section 824. Id. at 3. He again argues that because "the term 'practitioner' is employed solely in 21 U.S.C. 823" and "does not appear in section 824" this "is a clear indication that [Congress] did not intend to authorize an automatic, summary revocation ... where a registrant has continued to maintain authority to practice and dispense under the laws of any state." Id. at 4.

Respondent is mistaken. As the Agency has repeatedly noted, the Agency's rule actually derives from the text of section 802(21), which defines the term "practitioner," and section 823(f). Notably, in section 802(21), Congress defined "the term 'practitioner' [to] mean[ ] a ... physician ... or other person licensed, registered or otherwise permitted, by ... the jurisdiction in which he practices ... to distribute, dispense, [or] administer ... a controlled substance in the course of professional practice." 21 U.S.C. 802(21). The text of this provision makes clear that a physician is not a practitioner within the meaning of the CSA if he is not "licensed, registered or otherwise permitted, by the jurisdiction in which he practices ... to dispense [or] administer ... a controlled substance in the course of professional practice." Id.

To the same effect, Congress, in setting the requirements for obtaining a practitioner's registration, directed that "[t]he Attorney General shall register practitioners ... if the applicant is authorized to dispense ... controlled substances under the laws of the State in which he practices." 21 U.S.C. 823(f). Thus, based on these provisions, the Agency held nearly forty years ago that "[s]tate authorization to dispense or otherwise handle controlled substances is a prerequisite to the issuance and maintenance of a Federal controlled substances registration." Blanton, 43 FR at 27617 (revoking physician's registration based on one-year suspension of his state license) (emphasis added).

As the ALJ recognized, the CSA also provides that "[a] separate registration shall be required at each principal place of business or professional practice where the applicant ... dispenses controlled substances." 21 U.S.C. 822(e).[FN2] Based on this provision, the Agency has further explained that, because the issuance of a registration is dependent on a practitioner having authority to dispense controlled substances under the laws of a particular state, a registration issued for a location in one state cannot authorize the practitioner to engage in controlled substance dispensing in another state. See Clarification of Registration Requirements for Individual Practitioners, 71 FR 69478 (2006); 21 CFR 1301.12(a) & (b)(3). See also United States v. Moore, 423 U.S. 122, 140-41 (1975) ("Registration of physicians and other practitioners is mandatory if the applicant is authorized to dispense drugs ... under the law of the State in which he practices. [21 U.S.C. ] Sec. 823(f). In the case of a physician, this scheme contemplates that he is authorized by the State to practice medicine and to dispense drugs in connection with his professional practice.").[FN3]

Notably, while Respondent holds a medical license in Alabama, his registration authorizes him to dispense controlled substances only in the State of Louisiana. Moreover, the Show Cause Order proposes only the revocation of this registration[FN4] and the denial of his application for an additional registration in Louisiana. Because Congress has clearly mandated that a practitioner possess state authority in order to be deemed a practitioner under the Act, and Respondent is no longer authorized to dispense controlled substances under the laws of Louisiana, the State in which he is registered and has applied for an additional registration, revocation of his registration and denial of his application

4

**Arnold E. Feldman, M.D.; Decision and Order, 82 FR 39614-02**

are the appropriate sanctions. See, e.g., Hooper, 76 FR at 71371-72; Sheran Arden Yeates, 71 FR 39130, 39131 (2006); Dominick A. Ricci, 58 FR 51104, 51105 (1993); Bobby Watts, 53 FR 11919, 11920 (1988); Blanton, 43 FR at 27616.

As noted above, Respondent contends that Congress' use of the word "registrant" rather the word "practitioner" in section 824 is a clear indication that it did not intend to authorize an automatic, summary revocation . . . where a registrant has continued to maintain authority to practice and dispense under the laws of any state." Exceptions, at 4. A practitioner is, however, a particular category of registrant and thus falls within section 824(a). Given the provisions of section 802(21) and 823(f), it is not clear why Congress needed to use the word "practitioner" in section 824(a) to authorize the Agency to effectuate the policy expressed by sections 802(21) and 823(f). Moreover, Respondent ignores that there is a good reason for why Congress used different language in sections 823(f) and 824(a) to describe the class of persons who are subject to each provision, and this reason provides no support for Respondent's contention.

Section 823(f) is specifically applicable to those applicants seeking registration as a practitioner, which is just one of eight different categories of registration under the CSA. See generally 21 U.S.C. 823. By contrast, section 824(a), which authorizes the imposition of sanctions against a registrant based on any one of five findings, is applicable to all categories of registrants under the CSA, including Respondent. See, e.g., James L. Hooper, *39617 76 FR 71371 (2011), pet. for rev. denied Hooper v. Holder, 481 Fed. Appx. 826, 829 (4th Cir. 2012).

As explained above, the Agency's rule that revocation is warranted whenever a practitioner is no longer authorized to dispense controlled substances under the laws of the state in which he engages in professional practice is derived from the specific provisions of the Act which define the term "practitioner" and set forth the registration requirements which are specifically applicable to practitioners.[FN5] Hooper, 76 FR at 71371-72. Indeed, were I to adopt Respondent's view, he would be allowed to maintain his registration even though his lack of state authority bars him from obtaining a registration in Louisiana in the first place. 21 U.S.C. 823(f).

Moreover, under DEA regulations, a practitioner's registration is good for a period of three years, after which a practitioner must submit a renewal application. Yet that renewal application remains subject to section 823(f), which requires that "the applicant is authorized to dispense . . . controlled substances under the laws of the State in which he practices." Respondent's view leads to the illogical result that a practitioner would need to hold state authority to obtain his initial registration and any subsequent renewal of the registration, but would not need to hold state authority during the intervening period between the granting of his initial application and the granting of his renewal application.

I reject Respondent's contention and adhere to the Agency's longstanding and consistent interpretation of the Act, which has been affirmed by two courts of appeals. See Hooper v. Holder, 481 Fed. Appx. at 828; Maynard v. DEA, 117 Fed. Appx. 941, 945 (5th Cir. 2004). As the Fourth Circuit explained in Hooper, in rejecting the practitioner's contention that the agency's revocation of his registration ignored the discretion granted by section 824 and read the suspension option out of the statute:

We find Hooper's contention unconvincing. Section 824(a) does state that the [Agency] may "suspend or revoke" a registration, but the statute provides for this sanction in five different circumstances, only one of which is loss of a State license. Because § 823(f) and § 802(21) make clear that a practitioner's registration is dependent upon the practitioner having state authority to dispense controlled substances, the [Agency's] decision to construe § 824(a)(3) as mandating revocation upon suspension of a state license is not an unreasonable interpretation of the CSA. The [Agency's] decision does not "read[] the suspension option" out of the statute, because that option may still be available for the other circumstances enumerated in § 824(a).

481 Fed. Appx., at 828. See also Maynard, 117 Fed. Appx. at 945 (5th Cir. 2004) (upholding revocation of DEA registration after Texas DPS summarily suspended practitioner's controlled substance registration, noting that the Agency "has construed the CSA to require revocation when a registrant no longer possesses valid state authority to

**Arnold E. Feldman, M.D.; Decision and Order, 82 FR 39614-02**

handle controlled substances"; "We agree with [the] argument that it may have been arbitrary and capricious had the DEA failed to revoke [the physician's] registration under the circumstances."). Respondent makes an additional argument beyond that made in Hooper. He contends that "[it] is noteworthy that [section] 824(a) . . . employs the word 'may' in authorizing the Attorney General to revoke or suspend a registration, when among other factors, the registrant is no longer authorized by State law to engage in the dispensing of controlled substances." Exceptions, at 5. In Respondent's view, "under [section] 824(a), the loss of state authority is only one of several factors that may result in suspension or revocation of a practitioner's DEA registration." Id. He thus maintains that "[t]he correct interpretation is that [section] 802(21) and [section] 823(f) require state authority in order for the Administrator to grant an application for registration, but [section] 824(a)(3) only renders a loss of state authority a discretionary factor in determining whether to suspend or revoke an existing registration." Id. Respondent thus contends that Agency's "practice of deciding these cases on summary disposition without providing [him with] the opportunity to present other evidence supporting continued registration not only violates the plain language of the [CSA] . . . it also denies [him] the due process rights to which he is entitled under the" Administrative Procedure Act. Id. at 6.

Respondent cites no authority for his contention that the various grounds set forth in section 824(a) pursuant to which the Agency is authorized to suspend or revoke a registration are merely "discretionary factors" in the same manner as are the public interest factors of section 823. Indeed, his argument is refuted by the texts of section 823(f) and 824(a) and the history of the CSA.

Notably, section 823(f) instructs that "[i]n determining the public interest, the following factors shall be considered" and then lists the five factors. 21 U.S.C. 823(f). By contrast, section 824(a) makes no reference to "factors." Rather, the provision begins with the word "Grounds" and then states that "[a] registration pursuant to section 823 of this title . . . may be suspended or revoked by the Attorney General upon a finding that" one of the five different grounds apply to the registrant.[FN6] Id. § 824(a).

Had Congress intended that the various findings set forth in section 824(a) be treated as "discretionary factors," it would have done so by using language similar to that it used in section 823(f). See Jama v. ICE, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest.").

Rather, the findings enumerated in section 824(a) are grants of authority, each of which provides an independent and adequate ground to impose a sanction on a registrant. See Alfred S. Santucci, 67 FR 68688 (2002) ("Loss of state authority is an independent ground to revoke a practitioner's registration under 21 U.S.C. 824(a)(3)."); VI Pharmacy, Rushdi Z. Salem, 69 FR 5584, 5585 (2004) ("Pursuant to 21 U.S.C. 824(a)(1), falsification of a DEA application constitutes independent grounds to revoke a registration."); *39618 Lazaro Guerra, 68 FR 15226, 15227 (2003) ("mandatory exclusion from participation in the Medicare program pursuant to 42 U.S.C. 1320a-7(a) . . . is an independent ground for revoking a DEA registration" (citing 21 U.S.C. 824(a)(5)). See also Richard B. Lynch, Jr., 50 FR 7844, 7845 (1985) (Agency made findings under section 824(a) (1), 824(a)(2), and 824(a)(3); "The Administrator concludes that there are three independent statutory grounds for denial of the subject application.").

The Agency's interpretation is buttressed by the CSA's legislative history. As originally enacted, the CSA granted the Attorney General authority to suspend or revoke a registration:

upon a finding that the registrant—
(1) has materially falsified any application filed pursuant to or required by this title [the CSA] or title III [the Controlled Substance Import Export Act (CSIEA), 21 U.S.C. 951-971];

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.

**Arnold E. Feldman, M.D.; Decision and Order, 82 FR 39614-02**

(2) has been convicted of a felony under [the CSA or CSIEA] or any other law of the United States, or of any State, relating to any substance defined in this title as a controlled substance; or

(3) has had his state license or registration suspended, revoked, or denied by competent state authority and is no longer authorized by State law to engage in the . . . dispensing of controlled substances.

Pub. L. 91-513, § 304, 84 Stat. 1255 (codified at 21 U.S.C. 824(a)).[FN7] Describing this provision, the House Report explained that "[s]ubsection (a) of this section empowers the Attorney General to revoke or suspend any registration issued under this title if it is found that the holder has falsified his application, lost his State license, or has been convicted of a felony violation relating to any controlled substance." H. Rep. No. 91-1444 (1970), as reprinted in 1970 U.S.C.C.A.N. 4566, 4608-09. Absent from this statement is any discussion that in determining the sanction, the Attorney General was required to consider not only whether a registrant had lost his state authority, but also whether he had also materially falsified his application or had been convicted of a felony related to a controlled substance.

Moreover, while in 1984, Congress amended the CSA by granting the Attorney General authority to deny an application for a practitioner's registration and to revoke an existing registration on public interest grounds, it did so to increase the Agency's authority to respond to the "[i]mproper diversion of controlled substances by practitioners," which Congress explained "is one of the most serious aspects of the drug abuse problem." H. Rep. No. 98-1030, at 266 (1984), as reprinted in 1984 U.S.C.C.A.N. 3182, 3448. The House Report explained that "effective Federal actions against practitioners has been severely inhibited by the limited authority in current law to deny or revoke practitioner registrations" and that "the current limited grounds for revoking or denying a practitioner's registration have been cited as contributing to the problem of diversion of dangerous drugs." Id. Finding that "the overly limited bases in current law for denial or revocation of a practitioner's registration do not operate in the public interest," Congress amended section 823(f) "to expand the authority of the Attorney General to deny a practitioner's registration application" based upon a finding "that registration would be 'inconsistent with the public interest.'" Id. (emphasis added).

While Congress also amended section "824(a) to add to the current bases for denial, revocation, or suspension of registration a finding that registration would be inconsistent with the public interest on the grounds specified in [section] 823, which will include consideration of the new factors added by" the amendment, id. at 266-67, Congress did not otherwise alter the text of section 824(a), which makes clear that the various paragraphs of this provision are findings, each of which provides an independent and adequate ground to support agency action against a registration, and not discretionary factors to be considered by the Agency. Indeed, Respondent points to nothing in the language of section 824 or the CSA's legislative history to support his position, which would fundamentally alter the scope of the Agency's authority under section 824.

Nor is there any merit to Respondent's contention that denying him "the opportunity to present other evidence supporting [his] continued registration" denies him due process. Exceptions, at 6. As explained above, in a proceeding brought against a practitioner under section 824(a)(3), the only fact that is material is whether the practitioner is currently authorized to dispense controlled substances under laws of the state in which he practices and is registered. Because "other evidence supporting [his] continued registration" is not material to the outcome of this proceeding, and Respondent was provided with the opportunity to put forward evidence disputing the only material fact at issue, I reject his contention that the use of summary disposition denied him due process. See Rezik A. Saqer, 81 FR 22122, 22124 (2016) (citing cases).

I therefore reject each of Respondent's Exceptions. Based on the ALJ's finding that Respondent is not currently authorized to dispense controlled substances in Louisiana, the State in which he holds the DEA registration at issue in this proceeding and seeks an additional registration, I will adopt the ALJ's recommended order that I revoke his registration and deny his application.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Arnold E. Feldman, M.D.; Decision and Order, 82 FR 39614-02

**Order**

Pursuant to the authority vested in me by 21 U.S.C. 824(a), as well as 28 CFR 0.100(b), I order that DEA Certificate of Registration No. BF4179203 issued to **Arnold E. Feldman, M.D.**, as well as DATA Identification No. XF4179203, be, and they hereby are, revoked. I further order that the Application of **Arnold E. Feldman**, M.D., for a registration as a Hospital/Clinic, as well any application to renew the above the registration or for any other registration in the State of Louisiana, be, and it hereby is, denied. This ORDER is effective immediately.[FN8]

Dated: August 14, 2017.

Chuck Rosenberg,

Acting Administrator.

[FR Doc. 2017-17640 Filed 8-18-17; 8:45 am]

BILLING CODE 4410-09-P

Footnotes

1   While "[t]he suspension was to commence after [30] days," the Board, following flooding in the Baton Rouge area, extended the effective date of the suspension until October 14, 2016. Mot., Appendix C, at 1. On October 12, 2016, the Civil District Court for the Parish of Orleans stayed enforcement of the Board's Order through October 19, 2016, and directed the Board to show cause on October 19, 2016 as to "why the stay should not continue." Mot., Appendix D, at 1. However, it is undisputed that the court lifted the stay and that the Board's Order has gone into effect. Mot., Appendix E, at 2 (DI Declaration); see also Resp.'s Reply at 1.

2   See also 21 U.S.C. 822(b) ("Persons registered by the Attorney General . . . to . . . dispense controlled substances . . . are authorized to possess . . . or dispense such substances . . . to the extent authorized by their registration and in conformity with the other provisions of this subchapter.").

3   While the CSA was amended in 1984 to provide the Agency with authority to deny a practitioner's registration on public interest grounds, the requirement that a practitioner be "authorized to dispense . . . controlled substances under the laws of the States in which he practices," 21 U.S.C. 823(f), was unaltered by this legislation.

4   There is no evidence in the record as to whether Respondent holds a DEA registration in Alabama. Nor does this matter, because the Government proposes only the revocation of his Louisiana registration and the denial of his application for a second registration in that State.

5   Section 824(a)(3) grants authority applicable to all categories of DEA registrants (and not only practitioners) as well as each of the enumerated findings. As explained in Hooper, this general grant of authority in imposing a sanction must be reconciled with the CSA's specific provisions which mandate that a practitioner hold authority under state law in order to obtain and maintain a DEA registration. 76 FR, at 71371-72 (quoting Gozlon-Peretz v. United States, 498 U.S. 395, 407 (1991) ("A specific provision controls over one of more general application.") and Bloate v. United States, 130 S.Ct. 1345, 1354 (2010) (quoting D. Ginsberg & Sons, Inc., v. Popkin, 285 U.S. 204, 208 (1932) ("General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment.")).

6   As noted above, Respondent invokes the canon of statutory construction that "[w]here Congress includes particular language in one section of a statute but omits it in another . . ., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion"; he argues that it is significant that while Congress used the word "practitioner" in section 823, it used the word "registrant" in section 824(a). Exceptions, at 4 (quoting Keene Corp., 508 U.S. at 208 (other citation omitted)). Contrary to Respondent's contention, the correct comparison is between the language of section 823(f), which states that "[i]n determining the public interest, the following factors shall be considered," and the language of section 824(a), which authorizes the Agency to suspend or revoke a registration upon making one of the five enumerated "finding[s]."

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.

**Arnold E. Feldman, M.D.; Decision and Order, 82 FR 39614-02**

7   Cf. Reiter v. Sonotone Corp., 442 U.S.C. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise[.]") (citing FCC v. Pacifica Foundation, 438 U.S. 726, 739-40 (1978)).

8   Based on the Board's findings with respect to the sixth charge of the Administrative Complaint, which found that he violated state law by prescribing, dispensing, or administering legally controlled substances or any dependency-inducing medication without legitimate medical justification thereof or in other than a legal or legitimate manner," I find that the public interest necessitates that this Order be effective immediately. Mot. for Summ. Disp., Appendix C, at 13, 15; see also 21 CFR 1316.67.

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

**End of Document**

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Arnold E. Feldman, M.D.; Decision and Order, 82 FR 55635-01

82 FR 55635-01, 2017 WL 5593902(F.R.)
NOTICES
DEPARTMENT OF JUSTICE
Drug Enforcement Administration
[Docket No. 17-34]

## Arnold E. Feldman, M.D.; Decision and Order

Wednesday, November 22, 2017

\*55635 On May 24, 2017, the Assistant Administrator, Diversion Control Division, issued an Order to Show Cause to **Arnold E. Feldman**, M.D. (Respondent), of Natchez, Mississippi. The Show Cause Order proposed the revocation of Respondent's DEA Certificate of Registration No. AF2451261, on the ground that he "do[es] not have authority to handle controlled substances in the State of Mississippi, the [S]tate in which [he is] registered with . . . DEA." Show Cause Order, at 1.

As to the jurisdictional basis for the proceeding, the Show Cause Order alleged that Respondent is "registered as a practitioner in [s]chedules II-V pursuant to [Registration No.] AF2451261 with a registered address at 114 Jefferson Davis [Blvd.], Natchez, Mississippi." Id. The Order also alleged that this registration does not expire until "September 30, 2018." Id.

As to the substantive ground for the proceeding, the Show Cause Order alleged that Respondent's "[a]uthority to prescribe and administer controlled substances in the State of Mississippi was suspended effective March 16, 2017." Id. The Order then asserted that as a consequence of Respondent's "lack of authority to handle controlled substances in the State of Mississippi," his registration is subject to revocation. Id.

The Show Cause Order notified Respondent of his right to request a hearing on the allegation or to submit a written statement while waiving his right to a hearing and the procedure for electing either option. Id. at 2 (citing 21 CFR 1301.43). In addition, the Order notified Respondent of his right to submit a corrective action plan pursuant to 21 U.S.C. 824(c)(2)(C). Id. at 2-3.

On June 15, 2017, Respondent, through his counsel, requested a hearing on the allegation. Letter from Respondent's Counsel to Hearing Clerk, Office of Administrative Law Judges (June 15, 2017). The same day, the matter was assigned to Administrative Law Judge Charles Wm. Dorman (hereinafter, ALJ), who issued an order (also on June 15) directing the Government to file evidence supporting the allegation by June 28, 2017 at 2 p.m., as well any motion for summary disposition. Briefing Schedule For Lack Of State Authority Allegations, at 1. The ALJ's order also provided that if the Government moved for summary disposition, Respondent's opposition was due by July 12, 2017 at 2 p.m. Id.

On June 20, 2017, the Government filed its Motion for Summary Disposition. As support for its motion, the Government provided, inter alia: (1) A copy of Respondent's registration; (2) the Determination of the Mississippi State Board of Medical Licensure (Mar. 16, 2017) which ordered the suspension of his medical license "to run concurrently" with the suspension of his Louisiana medical license that was imposed by the Louisiana Board of Medical Examiners' Order of August 15, 2016; [FN1] and (3) a Declaration of a Diversion Investigator. Mot. for Summ. Disp., Appendices A, B, C. In its motion, the Government argued that it was undisputed that Respondent's Mississippi medical license is suspended and that because "Respondent no longer meets the statutory definition of a practitioner" and "possession of authority to dispense controlled substances under the laws of the State in which a practitioner engages in professional practice is a fundamental condition for both obtaining and maintaining a practitioner's registration," the revocation of Respondent's registration for his Mississippi office is warranted. Mot. for Summ. Disp., at 3-4.

Arnold E. Feldman, M.D.; Decision and Order, 82 FR 55635-01

On July 10, 2017, Respondent filed his Reply to the Government's Motion. Therein, "Respondent acknowledge[d] that his license to practice medicine in . . . Mississippi has been suspended in accordance with the . . . Mississippi State Board of Medical Licensure's Order." Resp. Reply, at 1. Respondent contended, however, "that there are material questions of fact and law that require resolution in a plenary, evidentiary proceeding." Id.

According to Respondent, these issues are that he possesses "an active and unrestricted license to practice medicine in" Alabama and "a full and unrestricted Alabama Controlled Substance Certificate." Id. at 2. Respondent argued that "none of the cases cited by the Government" address the situation "where a physician has lost authority to practice in one state, while retaining unrestricted authority in another." Id. at 3. He also argued that the Agency's longstanding rule that a practitioner must possess authority under the laws of the State in which he engages in professional practice "is based on the indiscriminate intermingling of" 21 U.S.C. 823 and 824, "each of which deals with different aspects of the control and enforcement authority to dispense controlled substances." Id. He further contended that while section 823 mandates that the Attorney General "register the applicant" if he "is authorized to dispense controlled substances under the laws of the State in which he practices," "[t]he term 'practitioner' does not appear in" section 824 and the latter provision "does not speak to a physician's authorization to practice or dispense under the laws of the state in which the registrant practices." Id. at 4.

In Respondent's view, section 824 authorizes revocation "only if the registrant is no longer authorized by State law to engage in the dispensing of controlled substances [under] any state law." Id. at 5. He also maintained that "[t]he fact that Congress employed the term 'practitioner' in" section 823(f) but not in section 824 "is a clear indication that it did not intend to authorize revocation or suspension of a [registration] where a registrant has continued to maintain authority to practice and dispense under the laws of any state." Id.; see also id. at 5 & n.14 ("Where Congress includes particular language in one section of a statute but omits it in another . . . it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting Keene Corp. v United States, 508 U.S. 200, 208 (1993) (other citation omitted)).

Finally, Respondent contended that "[t]he Government, and the cases cited by it, indiscriminately (and erroneously) intermingle" sections 823 and 824, and this intermingling along with "its misinterpretation of 21 U.S.C. 824(a)(3) amount to a violation of [his] constitutional right to travel." Id. at 6-7. He argued that "[t]heoretically, [he] should be able to pack up and remove himself and his practice from Louisiana to . . . Alabama, where he is authorized to practice medicine and dispense controlled substances. But[] his constitutional right to do so is impaired by the Government's misinterpretation of its authority to revoke" his registration. Id. at 7.

On July 25, 2017, the ALJ granted the Government's Motion. The ALJ found *55636 that "Respondent conceded in his Reply that his Mississippi medical license is currently suspended" and that "it is undisputed that . . . Respondent lacks state authorization to handle controlled substances in Mississippi, where [his Registration] Number AF2451261[] is registered." ALJ's Recommended Decision (R.D.), at 6. Because Respondent is registered in Mississippi, the ALJ found it irrelevant that Respondent holds a license to practice medicine in Alabama. Id. at 4 (citing cases). The ALJ noted that "both the CSA's 'definition of the term "practitioner" and the registration provision applicable to practitioners make clear that a practitioner must be currently authorized to dispense controlled substances by the State in which he practices in order to obtain and maintain a registration,'" and that the Agency's interpretation has been upheld by the Fourth Circuit. Id. (quoting Rezik A. Saqer, 81 FR 22122, 22125 (2016) and citing Hooper v. Holder, 481 Fed. App'x 826 (4th Cir. 2012)). The ALJ further reasoned that "Respondent's analysis is counter to the way the DEA has interpreted the CSA for nearly forty years." Id. at 5 (citing Saqer, 81 FR at 22126 (citing Frederick Marsh Blanton, 43 FR 27616 (1978))).

The ALJ also rejected Respondent's contention that the Agency's interpretation impairs his constitutional right to travel. Id. at 5-6. The ALJ noted that under DEA's regulation, " '[a] separate registration is required for each principal place of business.' " Id. at 5 (quoting 21 CFR 1301.12(a)). The ALJ also noted that in 2006, the Agency issued a final rule which

2

WESTLAW  © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Arnold E. Feldman, M.D.; Decision and Order, 82 FR 55635-01

"clariff[ied] that a practitioner must obtain a separate DEA registration for each [S]tate in which he or she practices," and that " '[j]ust as a license to practice medicine in one State does not authorize a practitioner to practice in any other State, a DEA registration based on a particular State's license cannot authorize dispensing controlled substances in another State.' " Id. at 6 (quoting Clarification of Registration Requirements for Individual Practitioners, 71 FR 69478, 69479 (2006) and citing Joe W. Morgan, 78 FR 61961, 61965 n.13 (2013)). The ALJ thus explained that "Respondent is able to pack up and remove himself and his practice from [Mississippi] to Alabama—he just cannot dispense or prescribe controlled substances there unless he first obtains a separate DEA registration for his Alabama location in accordance with 21 CFR 1301.12(a)." Id. The ALJ thus recommended that I revoke Respondent's registration. Id. at 7.

Neither party filed Exceptions to the ALJ's Recommended Decision. Thereafter, on August 22, 2017, the ALJ forwarded the record to me for Final Agency Action.[FN2]

Having considered the record, I reject Respondent's various contentions and adopt the ALJ's Recommended Decision. I will therefore also adopt the ALJ's recommendation that I revoke Respondent's registration. I make the following findings.

**Findings of Fact**

Respondent is the holder of DEA Certificate of Registration No. AF2451261, pursuant to which he is authorized to dispense controlled substances in schedules II through V as a practitioner, at the registered address of: Southwest MS Anesthesia PA, 114 Jefferson Davis Blvd., Natchez, Mississippi. Mot. for Summ. Disp., Appendix A. This registration does not expire until September 30, 2018. Id.

Respondent also holds a medical license issued by the Mississippi State Board of Medical Licensure. See Mot. for Summ. Disp., Appendix B, Determination and Order, at 2. However, on March 16, 2017, the Board issued a Determination and Order which suspended his medical license for a period "to run concurrently with" the suspension of his Louisiana medical license, "that is, until October 14, 2018, at which time [he] shall petition the Board for removal of the suspension"; the Mississippi Board's Order was effective on April 17, 2017. Id. at 4. Accordingly, I find that Respondent currently lacks authority to dispense controlled substances under the laws of the State of Mississippi.

**Discussion**

Pursuant to 21 U.S.C. 824(a)(3), the Attorney General is authorized to suspend or revoke a registration issued under section 823 of the Controlled Substances Act (CSA), "upon a finding that the registrant . . . has had his State license . . . suspended [or] revoked . . . by competent State authority and is no longer authorized by State law to engage in the . . . dispensing of controlled substances." With respect to a practitioner, DEA has long held that the possession of authority to dispense controlled substances under the laws of the State in which a practitioner engages in professional practice is a fundamental condition for obtaining and maintaining a practitioner's registration. See, e.g., James L. Hooper, 76 FR 71371 (2011), pet. for rev. denied, 481 Fed. Appx. 826 (4th Cir. 2012); Frederick Marsh Blanton, 43 FR 27616 (1978).

Respondent acknowledges that the Agency's precedents "do indeed reveal a consistent [and in his view] uncritical repetition of th[is] claim, to an extent . . . that the proposition has come to attain near sacrosanct status." Resp. Reply, at 3. Before the ALJ, he contended that the Agency's rule "is based on the indiscriminate intermingling of" the registration requirements of section 823 and the suspension/revocation authority of section 824. Id. He also argued that because "the term 'practitioner' is employed solely in 21 U.S.C. 823" and "does not appear in section 824" this "is a clear indication that [Congress] did not intend to authorize an automatic, summary revocation . . . where a registrant has continued to maintain authority to practice and dispense under the laws of any state." Id. at 4.

Respondent is mistaken. As the Agency has repeatedly noted, the Agency's rule actually derives from the text of section 802(21), which defines the term "practitioner," and section 823(f), which sets forth the requirements for obtaining a

3

Arnold E. Feldman, M.D.; Decision and Order, 82 FR 55635-01

practitioner's registration. Notably, in section 802(21), Congress defined "the term 'practitioner' [to] mean[ ] a . . . physician . . . or other person licensed, registered or otherwise permitted, by . . . the jurisdiction in which he practices . . . to distribute, dispense, [or] administer . . . a controlled substance in the course of professional practice." 21 U.S.C. 802(21). The text of this provision makes clear that a physician is not a practitioner within the meaning of the CSA if he is not "licensed, registered or otherwise permitted, by the jurisdiction in which he practices . . . to dispense [or] administer . . . a controlled substance in the course of professional practice." Id.

To the same effect, Congress, in setting the requirements for obtaining a practitioner's registration, directed that "[t]he Attorney General shall register practitioners . . . if the applicant is authorized to dispense . . . controlled substances under the laws of the State in which he practices." 21 U.S.C. 823(f). Thus, based on these provisions, the Agency held nearly 40 years ago that "[s]tate authorization to dispense or otherwise handle controlled substances is a prerequisite to the issuance and maintenance of a Federal controlled substances registration." Blanton, 43 FR *55637 at 27617 (revoking physician's registration based on one-year suspension of his state license) (emphasis added).

As the ALJ recognized, the CSA also provides that "[a] separate registration shall be required at each principal place of business or professional practice where the applicant . . . dispenses controlled substances." 21 U.S.C. 822(e).[FN3] Based on this provision, the Agency has further explained that, because the issuance of a registration is dependent on a practitioner having authority to dispense controlled substances under the laws of a particular State, a registration issued for a location in one State cannot authorize the practitioner to engage in controlled substance dispensing in another State. See Clarification of Registration Requirements for Individual Practitioners, 71 FR 69478 (2006); 21 CFR 1301.12(a) & (b)(3). See also United States v. Moore, 423 U.S. 122, 140-41 (1975) ("Registration of physicians and other practitioners is mandatory if the applicant is authorized to dispense drugs . . . under the law of the State in which he practices. [21 U.S.C. ] Sec. 823(f). In the case of a physician, this scheme contemplates that he is authorized by the State to practice medicine and to dispense drugs in connection with his professional practice.").[FN4]

Notably, while Respondent holds a medical license in Alabama, the registration at issue in this proceeding authorizes him to dispense controlled substances only in the State of Mississippi. Moreover, the Show Cause Order proposes only the revocation of this registration.[FN5] Because Congress has clearly mandated that a practitioner possess state authority in order to be deemed a practitioner under the Act, and Respondent is no longer authorized to dispense controlled substances under the laws of Mississippi, the State of the registration at issue here, revocation of this registration is the appropriate sanction. See, e.g., Hooper, 76 FR at 71371-72; Sheran Arden Yeates, 71 FR 39130, 39131 (2006); Dominick A. Ricci, 58 FR 51104, 51105 (1993); Bobby Watts, 53 FR 11919, 11920 (1988); Blanton, 43 FR at 27616.

As noted above, Respondent contends that Congress' use of the word "registrant" rather the word "practitioner" in section 824 "is a clear indication that it did not intend to authorize an automatic revocation of a [registration] where a registrant has continued to maintain authority to practice and dispense under the laws of any state." Resp. Reply, at 5. A practitioner is, however, a particular category of registrant and thus falls within section 824(a). Given the provisions of section 802(21) and 823(f), it is not clear why Congress needed to use the word "practitioner" in section 824(a) to authorize the Agency to effectuate the policy expressed by sections 802(21) and 823(f). Moreover, Respondent ignores that there is a good reason for why Congress used different language in sections 823(f) and 824(a) to describe the class of persons who are subject to each provision, and this reason provides no support for Respondent's contention.

Section 823(f) is specifically applicable to those applicants seeking registration as a practitioner, which is just one of eight different categories of registration under the CSA. See generally 21 U.S.C. 823. By contrast, section 824(a), which authorizes the imposition of sanctions against a registrant based on any one of five findings, is applicable to all categories of registrants under the CSA, including Respondent. See, e.g., James L. Hooper, 76 FR 71371 (2011), pet. for rev. denied Hooper v. Holder, 481 Fed. Appx. 826, 829 (4th Cir. 2012).

**Arnold E. Feldman, M.D.; Decision and Order, 82 FR 55635-01**

As explained above, the Agency's rule that revocation is warranted whenever a practitioner is no longer authorized to dispense controlled substances under the laws of the State in which he engages in professional practice is derived from the specific provisions of the Act which define the term "practitioner" and set forth the registration requirements which are specifically applicable to practitioners.[FN6] Hooper, 76 FR at 71371-72. Indeed, were I to adopt Respondent's view, he would be allowed to maintain his registration even though his lack of state authority bars him from obtaining a registration in Mississippi in the first place. 21 U.S.C. 823(f).

Moreover, under DEA regulations, a practitioner's registration is good for a period of three years, after which a practitioner must submit a renewal application. Yet that renewal application remains subject to section 823(f), which requires that "the applicant is authorized to dispense . . . controlled substances under the laws of the State in which he practices." Respondent's view leads to the illogical result that a practitioner would need to hold state authority to obtain his initial registration and any subsequent renewal of the registration, but would not need to hold state authority during the intervening period between the granting of his initial application and the granting of his renewal application.

I reject Respondent's contention and adhere to the Agency's longstanding and consistent interpretation of the Act, which has been affirmed by two courts of appeals. See Hooper v. Holder, 481 Fed. Appx. at 828; Maynard v. DEA, 117 Fed. Appx. 941, 945 (5th Cir. 2004). As the Fourth Circuit explained in Hooper, in rejecting the practitioner's contention that the Agency's revocation of his registration ignored the discretion granted by section 824 and read the suspension option out of the statute:

We find Hooper's contention unconvincing. Section 824(a) does state that the [Agency] may "suspend or revoke" a registration, but the statute provides for this sanction in five different circumstances, only one of which is loss of a State license. Because § 823(f) and § 802(21) make clear that a practitioner's registration is dependent upon the practitioner having state authority to dispense controlled substances, the [Agency's] decision to construe § 824(a)(3) as mandating revocation upon suspension of a state license is not an unreasonable interpretation of the CSA. The [Agency's] decision does not "read[ ] the suspension option" out of the statute, because that option may still be available for the other circumstances enumerated in § 824(a).

481 Fed. Appx., at 828. See also Maynard, 117 Fed. Appx. at 945 (5th Cir. 2004) (upholding revocation of DEA registration after Texas DPS summarily suspended practitioner's controlled substance registration, noting that the Agency "has construed the CSA to *55638 require revocation when a registrant no longer possesses valid state authority to handle controlled substances"; "We agree with [the] argument that it may have been arbitrary and capricious had the DEA failed to revoke [the physician's] registration under the circumstances.").

In his Reply to the Government's Motion, Respondent made an additional argument beyond that made in Hooper. He contended that "[it] is noteworthy that [section] 824(a) . . . employs the word 'may' in authorizing the Attorney General to revoke or suspend a registration, when among other factors, the registrant is no longer authorized by State law to engage in the dispensing of controlled substances." Resp. Reply, at 6. In Respondent's view, "under [section] 824(a), the loss of state authority is only one of several factors that may result in suspension or revocation of a practitioner's DEA registration." Id. He maintained that "[t]he correct interpretation is that [section] 802(21) and [section] 823(f) require state authority in order for the Administrator to grant an application for registration, but [section] 824(a)(3) only renders a loss of state authority a discretionary factor in determining whether to suspend or revoke an existing registration." Id. Based on his view that the loss of state authority is simply a discretionary factor, Respondent suggests that the use of summary disposition to resolve this matter is improper. Id.

Respondent, however, cites no authority for his contention that the various grounds set forth in section 824(a) pursuant to which the Agency is authorized to suspend or revoke a registration are merely "discretionary factors" in the same manner as are the public interest factors of section 823. Indeed, his argument is refuted by the texts of section 823(f) and 824(a) and the history of the CSA.

5

**Arnold E. Feldman, M.D.; Decision and Order, 82 FR 55635-01**

Notably, section 823(f) instructs that "[i]n determining the public interest, the following factors shall be considered" and then lists the five factors. 21 U.S.C. 823(f). By contrast, section 824(a) makes no reference to "factors." Rather, the provision begins with the word "Grounds" and then states that "[a] registration pursuant to section 823 of this title . . . may be suspended or revoked by the Attorney General upon a finding that" one of the five different grounds apply to the registrant.[FN7] Id. § 824(a).

Had Congress intended that the various findings set forth in section 824(a) be treated as "discretionary factors," it would have done so by using language similar to that it used in section 823(f). See Jama v. ICE, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest.").

Rather, the findings enumerated in section 824(a) are grants of authority, each of which provides an independent and adequate ground to impose a sanction on a registrant. See Alfred S. Santucci, 67 FR 68688 (2002) ("Loss of state authority is an independent ground to revoke a practitioner's registration under 21 U.S.C. 824(a)(3)."); VI Pharmacy, Rushdi Z. Salem, 69 FR 5584, 5585 (2004) ("Pursuant to 21 U.S.C. 824(a)(1), falsification of a DEA application constitutes independent grounds to revoke a registration."); Lazaro Guerra, 68 FR 15226, 15227 (2003) ("mandatory exclusion from participation in the Medicare program pursuant to 42 U.S.C. 1320a-7(a) . . . is an independent ground for revoking a DEA registration" (citing 21 U.S.C. 824(a)(5)). See also Richard B. Lynch, Jr., 50 FR 7844, 7845 (1985) (Agency made findings under section 824(a)(1), 824(a)(2), and 824(a)(3); "The Administrator concludes that there are three independent statutory grounds for denial of the subject application.").

The Agency's interpretation is buttressed by the CSA's legislative history. As originally enacted, the CSA granted the Attorney General authority to suspend or revoke a registration:

Upon a finding that the registrant—

(1) has materially falsified any application filed pursuant to or required by this title [the CSA] or title III [the Controlled Substance Import Export Act (CSIEA), 21 U.S.C. 951-971];

(2) has been convicted of a felony under [the CSA or CSIEA] or any other law of the United States, or of any State, relating to any substance defined in this title as a controlled substance; or

(3) has had his state license or registration suspended, revoked, or denied by competent state authority and is no longer authorized by State law to engage in the . . . dispensing of controlled substances.

Public Law 91-513, § 304, 84 Stat. 1255 (codified at 21 U.S.C. 824(a)).[FN8]

Describing this provision, the House Report explained that "[s]ubsection (a) of this section empowers the Attorney General to revoke or suspend any registration issued under this title if it is found that the holder has falsified his application, lost his State license, or has been convicted of a felony violation relating to any controlled substance." H. Rep. No. 91-1444 (1970), as reprinted in 1970 U.S.C.C.A.N. 4566, 4608-09. Absent from this statement is any discussion that in determining the sanction, the Attorney General was required to consider not only whether a registrant had lost his state authority, but also whether he had also materially falsified his application or had been convicted of a felony related to a controlled substance.

Moreover, while in 1984, Congress amended the CSA by granting the Attorney General authority to deny an application for a practitioner's registration and to revoke an existing registration on public interest grounds, it did so to increase the Agency's authority to respond to the "[i]mproper diversion of controlled substances by practitioners," which Congress

**Arnold E. Feldman, M.D.; Decision and Order, 82 FR 55635-01**

explained "is one of the most serious aspects of the drug abuse problem." H. Rep. No. 98-1030, at 266 (1984), as reprinted in 1984 U.S.C.C.A.N. 3182, 3448. The House Report explained that "effective Federal actions against practitioners has been severely inhibited by the limited authority in current law to deny or revoke practitioner registrations" and that "the current limited grounds for revoking or denying a practitioner's registration have been cited as contributing to the problem of diversion of dangerous drugs." Id. Finding that "the overly limited bases in current law for denial or revocation of a practitioner's registration do not operate in the public interest," Congress amended section 823(f) "to expand the authority of the Attorney General to deny a practitioner's registration application" based upon a finding "that registration would be 'inconsistent with the public interest.'" Id. (emphasis added).

\*55639 While Congress also amended section "824(a) to add to the current bases for denial, revocation, or suspension of registration a finding that registration would be inconsistent with the public interest on the grounds specified in [section] 823, which will include consideration of the new factors added by" the amendment, id. at 266-67, Congress did not otherwise alter the text of section 824(a), which makes clear that the various paragraphs of this provision are findings, each of which provides an independent and adequate ground to support agency action against a registration, and not discretionary factors to be considered by the Agency. Indeed, Respondent points to nothing in the language of section 824 or the CSA's legislative history to support his position, which would fundamentally alter the scope of the Agency's authority under section 824.

I therefore reject Respondent's contentions. Based on the ALJ's finding that Respondent is not currently authorized to dispense controlled substances in Mississippi, the State in which he holds the DEA registration at issue in this proceeding, I will adopt the ALJ's recommended order that I revoke his registration.

**Order**

Pursuant to the authority vested in me by 21 U.S.C. 824(a), as well as 28 CFR 0.100(b), I order that DEA Certificate of Registration No. AF2451261 issued to **Arnold E. Feldman**, M.D., be, and it hereby is, revoked. This Order is effective immediately.[FN9]

Dated: November 13, 2017.

Robert W. Patterson,

Acting Administrator.

[FR Doc. 2017-25287 Filed 11-21-17; 8:45 am]

BILLING CODE 4410-09-P

Footnotes

1   The Government also included various other documents from the Mississippi Board proceeding, including an Order of Continuance, an Order of Temporary Action Pending Hearing, a Summons issued to Respondent, an Affidavit of a Board Investigator, and a copy of the Louisiana Board's Decision and Order which was an exhibit in the Mississippi Board proceeding. See generally Mot. for Summ. Disp., at Appendix B. Based on the suspension of his Louisiana medical license, on August 14, 2017, the former Acting Administration revoked Respondent's DEA registration for his practice in Baton Rouge, Louisiana. See **Arnold E. Feldman**, 82 FR 39614, 39618 (2017).

2   Subsequent to the ALJ's issuance of his Recommended Order, Respondent has not filed a motion based on newly discovered evidence to the effect that his state licensed has been restored.

**Arnold E. Feldman, M.D.; Decision and Order, 82 FR 55635-01**

3   See also 21 U.S.C. 822(b) ("Persons registered by the Attorney General . . . to . . . dispense controlled substances . . . are authorized to possess . . . or dispense such substances . . . to the extent authorized by their registration and in conformity with the other provisions of this subchapter.").

4   While the CSA was amended in 1984 to provide the Agency with authority to deny a practitioner's registration on public interest grounds, the requirement that a practitioner be "authorized to dispense . . . controlled substances under the laws of the State in which he practices," 21 U.S.C. 823(f), was unaltered by this legislation.

5   There is no evidence in the record as to whether Respondent holds a DEA registration in Alabama. Nor does this matter, because the Government proposes only the revocation of his Mississippi registration.

6   Section 824(a)(3) grants authority applicable to all categories of DEA registrants (and not only practitioners) as well as each of the enumerated findings. As explained in Hooper, this general grant of authority in imposing a sanction must be reconciled with the CSA's specific provisions which mandate that a practitioner hold authority under state law in order to obtain and maintain a DEA registration. 76 FR, at 71371-72 (quoting Gozlon-Peretz v. United States, 498 U.S. 395, 407 (1991) ("A specific provision controls over one of more general application.") and Bloate v. United States, 130 S.Ct. 1345, 1354 (2010) (quoting D. Ginsberg & Sons, Inc., v. Popkin, 285 U.S. 204, 208 (1932) ("General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment.")).

7   As noted above, Respondent invokes the canon of statutory construction that "[w]here Congress includes particular language in one section of a statute but omits it in another . . ., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion"; he argues that it is significant that while Congress used the word "practitioner" in section 823, it used the word "registrant" in section 824(a). Resp.'s Reply, at 5 & n.14 (quoting Keene Corp., 508 U.S. at 208 (other citation omitted)). Contrary to Respondent's contention, the correct comparison is between the language of section 823(f), which states that "[i]n determining the public interest, the following factors shall be considered," and the language of section 824(a), which authorizes the Agency to suspend or revoke a registration upon making one of the five enumerated "finding[s]."

8   Cf. Reiter v. Sonotone Corp., 442 U.S.C. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise[.]") (citing FCC v. Pacifica Foundation, 438 U.S. 726, 739-40 (1978)).

9   While the Mississippi Board Order was based on the Louisiana Board's Order, as noted in the former Acting Administrator's Decision and Order which revoked Respondent's Louisiana registration, the Louisiana Board found proved the sixth charge of the Administrative Complaint in that proceeding, in that Respondent violated state law by "[p]rescribing, dispensing, or administering legally controlled substances or any dependency-inducing medication without legitimate medical justification thereof or in other than a legal or legitimate manner." See 82 FR at 39618 n.8 (2017); see also Mot. for Summ. Disp., Appendix B, at 22, 24 (Louisiana Board Order at 12, 14). For the same reasons as those cited by the former Acting Administrator, I find that the public interest necessitates that this Order be effective immediately. See also 21 CFR 1316.67.

**End of Document**                              © 2019 Thomson Reuters. No claim to original U.S. Government Works.