IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | Case No. 1:17CR00027 |
| v. ) | |
| ) | **OPINION AND ORDER** |
| ) | |
| JOEL A. SMITHERS, ) | By: James P. Jones |
| ) | United States District Judge |
| Defendant. ) | |

*Zachary T. Lee, Randy Ramseyer, and S. Cagle Juhan, Assistant United States Attorneys, Abingdon, Virginia, for United States; Don M. Williams, Jr., Williams Law Office, PLC, Pennington Gap, Virginia, for Defendant.*

A jury has convicted the defendant, a physician, of one count each of possessing with the intent to distribute controlled substances and maintaining a place for the purpose of unlawfully distributing controlled substances, and numerous counts of distributing controlled substances without a legitimate medical purpose or beyond the bounds of medical practice. The jury also found that the prescription of controlled substances charged in two counts lead to the death of a patient. For the following reasons, I will grant a motion for judgment of acquittal as to Count One, and I will deny a motion for judgment of acquittal or a new trial as to the remaining counts.

I.

The facts shown at trial, viewed in the light most favorable to the government, and as relevant to the pending motions, are as follows.

On June 16, 2015, the defendant, Joel A. Smithers, D.O., opened an urgent care clinic in Beckley, West Virginia. In the first week that his clinic was open, Smithers saw approximately 80 individuals who had previously been patients at the nearby Hope Clinic, which had closed because it was unable to obtain a license to operate as a pain clinic. On June 23, 2015, after receiving a complaint from another physician in Beckley, a team from the West Virginia Office of Health Facility Licensure and Certification visited Smithers' clinic. Smithers told the team that they would need a subpoena to see patient records, so the team obtained an inspection warrant and returned to the clinic the following day. When they returned, they found that the clinic was locked and had been cleaned out. In the dumpsters behind the clinic, they found untested urine samples with patient identifying information. When they were later able to access patient records, they found that Smithers had been treating more than 50 percent of his patients with narcotics for pain management without a license to operate as a pain clinic, in violation of West Virginia law.

A few months later, in August of 2015, Smithers opened another clinic in Martinsville, Virginia. Some of the patients he had treated in West Virginia

followed him to his new practice.  Others came from Kentucky and Tennessee, as well as Virginia.  On March 7, 2017, U.S. Drug Enforcement Administration ("DEA") agents executed a search warrant at Smithers' clinic and residence.  The agents found a total of $57,168 in United States currency in Smithers' clinic, residence, and vehicle.  Also inside Smithers' vehicle, the agents found a backpack containing over-the-counter medicine and supplement bottles.  The bottles held mixtures of hydromorphone, oxycodone, oxymorphone, methadone, and morphine pills, along with over-the-counter and supplement pills.  The agents also found small plastic baggies containing oxymorphone pills.

On September 12, 2017, Smithers was charged in a one-count Indictment with possessing with the intent to distribute controlled substances.  The government then obtained a Superseding Indictment, which added one count of maintaining a place for the purpose of unlawfully distributing controlled substances and 714 counts of distributing controlled substances without a legitimate medical purpose and beyond the bounds of medical practice.  A Second Superseding Indictment added 148 counts of distributing controlled substances without a legitimate purpose and beyond the bounds of medical practice, for a total of 860 such counts.[1]  With respect to two of those counts, the government charged

---

[1] The government moved to dismiss one of these counts on the first day of trial, which motion was granted.  Oral Order, ECF No. 166.

that the use of the controlled substances prescribed resulted in the death of patient H.H. After an eight-day trial, the jury returned its verdict convicting Smithers of all charges and finding that the use of the controlled substances at issue resulted in the death of the patient.

Smithers has moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the government's evidence was insufficient to sustain his convictions by the jury, and for a new trial pursuant to Federal Rule of Criminal Procedure 33, arguing that I incorrectly instructed the jury. The motion has been fully briefed and is now ripe for decision.[2]

## II.

On review of a motion for a judgment of acquittal under Rule 29, the court "must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision." *Burks v. United States*, 437 U.S. 1, 17 (1978). In the context of a criminal conviction, substantial evidence is evidence that "a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Newsome*, 322 F.3d 328, 333 (4th Cir. 2003). The court should consider "circumstantial as well as direct evidence, and allow the

---

[2] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). However, the court must not weigh the evidence or assess the credibility of witnesses, since this is the job of the jury. *Burks*, 437 U.S. at 17.

Rule 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The paradigmatic use of a Rule 33 motion is to seek a new trial on the ground that the jury's verdict was against the manifest weight of the evidence." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (internal quotation marks and citations omitted). Further, courts have "widely agreed that Rule 33's interest of justice standard allows the grant of a new trial where substantial legal error has occurred." *Id.* (internal quotation marks and citation omitted). "[A]ny error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial." *United States v. Wall*, 389 F.3d 457 (5th Cir. 2004).

A.

I will first consider the grounds on which Smithers moves for a new trial. Smithers argues that I improperly instructed the jury as to the counts charging him with conduct that was "without a legitimate medical purpose or beyond the bounds of medical practice." Instrs. Nos. 15A, 19, 20, ECF No. 204. Smithers contends

that I should have instructed that the government must prove that his conduct was without a legitimate medical purpose *and* beyond the bounds of medical practice. He argues that without such an instruction, "doctors can go to jail even for a good faith error in judgment if they happen to prescribe medication outside the normal course of professional practice and do so unknowingly," or for conduct that might amount only to medical malpractice.³ Def.'s Resp. to Gov't Opp'n 3, ECF No. 245.

I find that no error occurred and a new trial is not required.⁴ As Smithers acknowledges, my instruction was proper under Fourth Circuit precedent. *See United States v. Hurwitz*, 459 F.3d 463, 457 (4th Cir. 2006); *United States v. Singh*, 54 F.3d 1182, 1187 (4th Cir. 1995); *see also United States v. Hitzig*, 63 F. App'x 83, 87 (4th Cir. 2003) (unpublished) (rejecting an instruction like that proposed by Smithers). In addition, I instructed the jury as to the relevance of a doctor's good faith in treating a patient and that the case did not concern whether Smithers acted carelessly or negligently. Accordingly, I turn to the grounds on which Smithers moves for a judgment of acquittal.

---

³ Smithers also asserts that failing to apply his interpretation renders 21 U.S.C. § 841 unconstitutionally vague as applied to physicians. However, he makes no argument in support of this assertion. Moreover, I have rejected such an argument in a previous case, *United States v. Sutherland*, Nos. 1:00CR00052, 1:00CR00093, 1:01CR00009, 2001 WL 497319, at *1–2 (W.D. Va. May 10, 2001), and I do so here for the same reasons.

⁴ For the reasons discussed hereafter, I also find that as to all counts except Count One, the jury's verdict was not against the manifest weight of the evidence.

B.

Smithers first contends that no reasonable juror could find the government's evidence sufficient to convict him of Count One, which charged him with possessing with the intent to distribute controlled substances. Smithers first raised this argument in an oral motion for a judgment of acquittal as to all counts at the close of the government's evidence. I took the motion under advisement as to Count One and denied it as to all other counts. Oral Order, ECF No. 186. Because I reserved decision as to Count One at the close of the government's evidence, I must decide the motion as to that count based on the evidence from the government's case-in-chief alone. Fed. R. Crim. P. 29(b).

To meet its burden of proof with respect to Count One, the government must have proved beyond a reasonable doubt "that the defendant (1) knowingly (2) possessed the controlled substance (3) with the intent to distribute it." *United States v. Rusher*, 966 F.2d 868, 878 (4th Cir. 1992). Without objection by the government, I also instructed the jury that they must find that the possession was without a legitimate medical purpose or beyond the bounds of medical practice.

The facts presented by the government as Count One show that while executing a search warrant, DEA agents found over $20,000 in the glove compartment of Smithers' vehicle. They also found hydromorphone, oxycodone, oxymorphone, methadone, and morphine pills, along with over-the-counter and

supplement pills, mixed together in large bottles in Smithers' backpack. Lastly, they found small plastic baggies containing 10 oxymorphone pills each. A DEA agent testified that based on his training and experience, the quantities of oxymorphone pills separated into the baggies were indicative of distribution amounts, and they were packaged such that they could be easily distributed.

There was no evidence that Smithers intended to distribute the controlled substances found in his vehicle to any particular patients. The government does not contend — and there was no evidence — that Smithers dealt drugs unconnected to his medical practice. While the government argues that Smithers' medical practice was purely a cover for illegal drug trafficking, pointing out that he signed blank prescriptions for his employees to fill in and give to patients when he was not present at the clinic and thus had not seen the patients in person, and that on multiple occasions, he wrote and mailed prescriptions for patients he had not seen, there was no evidence that he ever abandoned the pretense of practicing medicine in order to distribute controlled substances. On one occasion Smithers met a patient in a Starbucks parking lot and gave her a prescription, but there was no evidence that Smithers ever directly delivered controlled substances to or for his patients, either in his office or elsewhere.

In light of the evidence in the government's case, I find that a reasonable jury could not find beyond a reasonable doubt that Smithers was guilty of Count

One, and accordingly I will grant the oral motion for judgment of acquittal made during trial as to that count.[5]

C.

Smithers also argues that no reasonable juror could find the government's evidence sufficient to convict him of each count relating to a patient who did not testify at trial.[6] He contends that the evidence as to those counts is insufficient because it consisted only of the testimony of the government's expert witness, Deeni Bassam, M.D., and the patient and prescription records for each individual. In particular, he notes that Dr. Bassam based his judgments only on patient and prescription records and did not conduct physical examinations of or speak with any of the individuals in question.

In *United States v. Tran Trong Cuong*, 18 F.3d 1132 (4th Cir. 1994), the court reversed a physician's conviction on 80 counts of distributing controlled substances outside the bounds of medical practice because the government's evidence as to those counts was based only on expert testimony, and:

---

[5] Pursuant to Rule 29(d), I also conditionally determine that a new trial should be granted as to Count One if the judgment of acquittal is later vacated or reversed, finding that the interest of justice so requires.

[6] Smithers lists each of these counts and their corresponding patients in paragraph three of his motion. They cover 41 of the patients referenced in Counts Three through 862.

> [The expert] did not mention any of the 20 patients who did not testify . . . . He did not discuss these patients by name nor did he comment on the prescriptions they had received. He neither examined nor interviewed any of these patients. No effort was made by the prosecution to focus his testimony on any of these 80 counts.

*Id.* at 1141. The court also noted that:

> Although the [expert] witness admitted that he did not have sufficient information from some of the charts to conclude that the prescriptions were improper, these charts were included in the [report] and also formed the basis of separate counts in the indictment, simply because they followed a pattern.[7]

*Id.* The court found that a conviction based on such evidence was contrary to a defendant's entitlement "to individual consideration of every count in an indictment by the jury and evidence sufficient to convict on each count beyond a reasonable doubt." *Id.* at 1142. In a later case, the Fourth Circuit clarified its holding in *Tran Trong Cuong*, stating, "[W]e reversed the convictions, not because the victims did not testify, but rather because their lack of testimony was not replaced by any substantive evidence." *Singh*, 54 F.3d at 1188.

The evidentiary issues in *Tran Trong Cuong* are not present in this case. Dr. Bassam testified that he had reviewed each patient file in its entirety, as well as all

---

[7] In particular, the expert in *Tran Trong Cuong* testified regarding one patient, "This individual case taken by itself could be justified. Taking all of the other cases together and following the pattern that I have been reading for the 16 hours that I read, I wouldn't think it was justified." 18 F.3d at 1141. When asked if other patients' cases could be justified, the expert testified, "Well, some of the patients just had a few entries, there were just three or four entries. On that basis, I have no way of judging whether they were valid or not because there was not enough ongoing relationship." *Id.*

of the prescriptions charged in the Second Superseding Indictment. He testified that based on this review, each of the prescriptions was not written for a legitimate medical purpose and was outside the scope of professional practice. To document Dr. Bassam's review of each prescription, the government submitted as an exhibit a chart on which Dr. Bassam had indicated that he had reviewed the prescription and his conclusion applied to it. The government also introduced each patient's medical chart for the jury's own review.

Dr. Bassam also testified about a number of patient records in particular, describing their general contents and focusing on specific indications that the patients' prescriptions were not for a legitimate medical purpose and were outside the scope of professional practice. For example, patient F.B.'s records showed that on multiple occasions, he had tested positive for controlled substances that Smithers had not prescribed, and negative for oxycodone, which Smithers had prescribed. Dr. Bassam testified that this indicated that F.B. was either overusing the prescribed oxycodone ahead of schedule so that it had already left his system by the time of the test, or was not taking it and instead diverting it for money or other drugs. He also testified that under either of those circumstances, it was improper to continue prescribing controlled substances for F.B., which Smithers did. In addition, patient B.Ha.'s records showed that he had told Smithers that he had received treatment in a methadone or Suboxone treatment center. Dr. Bassam

-11-

testified that such treatment is for opioid addiction or abuse, yet Smithers prescribed B.Ha. additional opioids. Patient L.K.'s records showed that marks consistent with intravenous drug use appeared on her arms, which Dr. Bassam stated indicated an active and ongoing drug addiction, yet Smithers prescribed her the medications to which she showed an addiction. This represents just some of Dr. Bassam's testimony regarding the individual patients whose prescriptions gave rise to the charges against Smithers.[8]

Although Dr. Bassam did not testify as to the specifics of each patient record and prescription, a task that would have taken considerable time given the over 800 counts covering 50 patients, this does not raise the issue present in *Tran Trong Cuong*. There, the government's expert testified that for some of the individuals whose prescriptions were charged, he could not conclude that the prescriptions were unjustified based on the patient's medical record, but he nonetheless came to that conclusion based on the defendant's practices with respect to other patients. Here, Dr. Bassam highlighted the contents of a subset of patient records and further testified that based on his review of all of the relevant records, he could conclude that each patient's prescriptions were not for a legitimate medical purpose and were outside the scope of professional practice. Accordingly, Smithers was

---

[8] In total, Dr. Bassam testified as to the specifics of the patient files of 19 individuals.

afforded individual review of each count against him, and there was evidence sufficient to convict him on each count.

Moreover, the government presented evidence in addition to expert testimony and patient records that was applicable to each charged prescription and that a reasonable juror could find sufficient to convict Smithers of each charge. Other than when he offered free sports physicals, Smithers prescribed controlled substances to every one of his patients. Smithers' practice did not accept insurance and instead required patients to pay for each visit and prescription in cash or credit card. His office lacked basic medical equipment and supplies, such as exam tables, and he did not employ any nurses. Juan Angel, who Smithers employed to conduct drug tests, had no medical training or experience. Peter Bodai, the practice's receptionist, testified that he would not have gone to Smithers with a legitimate medical problem. Smithers himself worried about keeping "the DEA and State Board of medicine off of [his] back," Gov't Ex. DWi1000 at 257, ECF No. 177-14, and feared that his patients were assisting law enforcement or that the DEA was surveilling his practice.

D.

Lastly, Smithers argues that no reasonable juror could find the government's evidence sufficient to convict him of each count relating to patients J.L., B.F., and J.P., because each of these patients testified that they had a legitimate medical need

for the controlled substances that he had prescribed for them. However, Smithers' arguments with respect to each of these patients rely on evidence favorable to him, rather than on any lack of evidence favorable to the government. In deciding a motion under Rule 29, I must consider whether there is substantial evidence, viewed in the light most favorable to the government.

With respect to patient J.L., Smithers notes that J.L. testified that he had genuine pain problems when he visited Smithers, Smithers performed a thorough exam and met with him for at least 30 minutes during his first appointment, and the controlled substances that Smithers prescribed allowed him to perform daily activities that he could not otherwise do. Although these statements of the evidence are accurate, I nonetheless find that there was evidence sufficient to uphold the jury's conviction on the counts relating to J.L. J.L. testified that Ri.J., who J.L. had never previously met but who frequently transported patients to Smithers' office, drove him six hours each way to see Smithers. J.L. traveled that distance and saw Smithers because doctors closer to his home would not prescribe him the controlled substances that Smithers would prescribe. Ri.J. paid for J.L.'s visit and prescriptions, and he went to the pharmacy to have J.L.'s prescriptions filled. In return, J.L. gave Ri.J. a portion of the pills from his prescription. J.L. stopped seeing Smithers because he knew that the arrangement with Ri.J. was wrong.

Smithers next argues that a reasonable juror could not find that patient B.F.'s prescriptions were without a legitimate medical purpose or beyond the bounds of medical practice, because B.F. testified that she suffered from a degenerative bone disease, a bulging disk, and she needed a knee replacement, and that Smithers met with her for over two hours, examined her back, and recorded her vital signs during her first appointment. However, I find there was evidence sufficient to uphold the jury's conviction on the counts relating to B.F. Prior to seeing Smithers, she had been treated by two other doctors who each lost their license to prescribe controlled substances. B.F. traveled four hours each way for appointments with Smithers. On one occasion, B.F. sold at least four oxycodone pills that Smithers had prescribed for her. The buyer was cooperating with law enforcement, and as a result of the encounter, B.F. was charged with distributing controlled substances.

With respect to patient J.P., Smithers notes that J.P. testified that she had genuine pain problems that physical therapy had not improved, and Smithers examined her back and performed other tests during her first appointment. Nonetheless, I find that there was evidence sufficient to uphold the jury's conviction on the counts relating to J.P. J.P. testified that she and her husband traveled four hours from West Virginia to see Smithers because doctors closer to their home would not prescribe them pain medication. She and her husband had to

fill their prescriptions from Smithers at a pharmacy approximately 100 miles from their home because other pharmacies would not fill them.  A number of J.P.'s drug screens showed that she was negative for oxycodone, which Smithers had been prescribing, and when Smithers performed a pill count to determine if J.P. was taking her medications appropriately, the pill count was off.  However, Smithers continued prescribing the medications.

In addition, of course, the government's expert, after examining the medical records of each of these patients, opined that the prescriptions were without a legimate prupose and beyond the bounds of medcial practice.

III.

For the foregoing reasons, it is **ORDERED** as follows:

1. The defendant's oral Motion for Judgment of Acquittal as to Count One taken under advisement during trial, ECF No. 185, is GRANTED;

2. Pursuant to Rule 29(d), it is conditionally determined that a new trial should be granted as to Count One if the judgment of acquittal is later vacated or reversed;

3. The defendant's renewed oral Motion for Judgment of Acquittal as to Count One, ECF No. 196, is moot; and

4. The defendant's Motion for Judgment of Acquittal or in the Alternative for a New Trial, ECF No. 218, is DENIED.

ENTER: July 31, 2019

/s/ *James P. Jones*
United States District Judge