UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.: 1:17-CR-00027 |
| | ) | |
| JOEL A. SMITHERS | ) | |

**GOVERNMENT'S POSITION IN SUPPORT OF GOVERNMENT'S MOTION FOR DETENTION OF JOEL A. SMITHERS**

This matter is before the Court on remand from the United States Court of Appeals for the Fourth Circuit. On March 7, 2024, the parties convened before the Court for a status conference, in which the Government moved for detention of Joel A. Smithers. For the reasons that follow, based on the presumption of detention, the nature and circumstances of the charged offenses, and the weight of the evidence against Smithers, the Government respectfully submits that no condition or combination of conditions can reasonably assure Smithers' appearance before the Court, and Smithers should be detained pending retrial.[1]

**I.   Background.**

On August 10, 2017, the Government filed a Criminal Complaint against Smithers charging him with one count of possession with the intent to distribute Schedule II controlled substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). ECF No. 3. Smithers initially appeared before the Court five days later, and the Court released him on

---

[1] References herein to "JA" are to the "Joint Appendix" filed before the Fourth Circuit on Smithers' appeal. Case No. 19-4761, ECF No. 54.

bond. ECF Nos. 8, 10. Thereafter, the Government charged Smithers pursuant to an Indictment with one count of possession with intent to distribute hydrocodone, hydromorphone, oxycodone, oxymorphone, methadone, and morphine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). ECF No. 23. On December 18, 2017, the Government filed a Superseding Indictment, which contained the same count as the original Indictment as Count One. ECF No. 36. In addition, the Superseding Indictment charged Smithers with one count of maintaining a place for the purpose of unlawful distribution, in violation of 21 U.S.C. § 856 (Count Two), and 714 counts of unlawful distributing and dispensing of Schedule II controlled substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). ECF No. 36.

The Government filed a Second Superseding Indictment on September 27, 2018, which remains the operative charging document. ECF No. 80. The Second Superseding Indictment charged Smithers in the same counts as the Superseding Indictment but added 146 counts of unlawful distributing and dispensing of Schedule II controlled substances, for a total of 860 counts of the same (Counts Three through Eight Hundred Sixty-Two). *Id.* Counts 298 and 299 alleged that death resulted from the use of the controlled substances. *Id.*

On April 24, 2019, the Court granted the Government's motion to dismiss Count 101. ECF No. 166. Following an eight-day trial, a jury found Smithers guilty on all of the remaining counts, ECF No. 205, and the Court remanded him into custody, ECF No. 203. The Court denied Smithers' motion for reconsideration of bond, ECF No. 223, and the Court denied Smithers' motion for acquittal on all counts except Count One, ECF No. 256.

The Court sentenced Smithers to a total term of 480 months of imprisonment on October 2, 2019, ECF No. 283, and Smithers' appeal followed, ECF No. 285.

While Smithers' appeal was pending (and after being placed into abeyance), the Supreme Court of the United States decided *Ruan v. United States*, 597 U.S. 450 (2022). *United States v. Smithers*, 92 F.4th 237, 245 (4th Cir. 2024). The Supreme Court determined in *Ruan* that the *mens rea* requirement under § 841—that is, whether the defendant "knowingly or intentionally" manufactured, distributed, or dispensed a controlled substance "except as authorized"—extended to the "except as authorized" clause. *Ruan*, 597 U.S. at 457. Thus, § 841 requires the government to prove "that the defendant knowingly or intentionally acted in an unauthorized manner" after the defendant satisfies his "burden of producing evidence that his or her conduct was 'authorized.'" *Id.*

The Fourth Circuit subsequently vacated and remanded Smithers' convictions on all counts. *Smithers*, 92 F.4th at 252. The Fourth Circuit found that the jury instructions on the 859 distribution counts failed to instruct the jury on the correct *mens rea* requirement under *Ruan*, and that such error was not harmless. *Id.* at 248, 252. The court further held that because "the conviction on Count [Two] effectively rested on the unlawful-distribution convictions, the error in the Count [Two] instructions also wasn't harmless." *Id.* at 252.

The Fourth Circuit issued its mandate on February 26, 2024, ECF No. 323, and the parties convened for a status conference before the Court on March 7, 2024, ECF No. 328. Smithers waived his right to a speedy trial, and the Court scheduled a three-week trial beginning on December 2, 2024. ECF Nos. 329, 335, 337. At the status conference, Smithers inquired as to whether he would be released pending retrial. The Government

moved for Smithers' detention pursuant to 18 U.S.C. § 3142(f), ECF No. 331, and the Court continued the detention hearing until April 2, 2024, ECF No. 336.

## II.     Legal Standard.

Following a hearing, the court must detain a defendant pending trial if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  If the court "finds that there is probable cause to believe that the [defendant] committed-- an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . ," as is the case here, then subject to rebuttal by the defendant, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."  *Id.* § 3142(e)(3), (e)(3)(A).

In a presumption case, "the burden of production shifts to the defendant to come forward with evidence to suggest that the presumption is unwarranted in his or her particular case."  *United States v. Drake*, No. 5:22-cr-00008, 2023 WL 213917, at *2 (W.D. Va. Jan. 12, 2023) (quoting *United States v. Boyd*, 484 F. Supp. 2d 486, 488 (E.D. Va. 2007)).  The burden of persuasion remains on the Government.  *Id.* (citation omitted). "Should the defendant satisfy his or her burden of production under 18 U.S.C. § 3142(f), the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight, or by clear-and-convincing evidence that the defendant presents a danger to the community."  *United States v. Rodriquez*, 147 F. Supp. 3d 1278, 1286 (D.N.M. 2015) (citation omitted); *cf. United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir.

4

2001) ("With regard to the risk of flight as a basis for detention, the government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence at future court proceedings.").

> The factors to be considered in determining whether to release a defendant pending trial are set forth in 18 U.S.C. § 3142(g) and include: (1) nature and circumstances of the offenses charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Stewart*, 19 F. App'x at 48.

Courts have held that "[e]ven if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain." *See, e.g.*, *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991).

**III. Discussion.**

Smithers has not rebutted the presumption of detention in this case based on the nature and circumstances of the charged offenses and the weight of the evidence. Because "no condition or combination of conditions will reasonably assure" Smithers' appearance before this Court, the Court should detain Smithers pending retrial. § 3142(e).

In a case before the United States District Court for the District of Columbia, the government opposed the defendant's release following remand even though the defendant had been previously released during the pendency of his original trial. *United States v. Slatten*, 286 F. Supp. 3d 61, 63–64 (D.D.C. 2017), *aff'd*, 712 F. App'x 15 (D.C. Cir. 2018). In that case, the defendant was charged with first-degree murder, of which he had been

5

convicted and received a life sentence. *Id.* at 66–67. The court of appeals subsequently vacated the conviction, and the defendant argued that he should be released pending retrial because "he already faced [that] charge once while he was released and did in fact show up for trial." *Id.* He further submitted letters from family and friends indicating that he would never flee while attempting to clear his name. *Id.* at 67.

The district court rejected the defendant's argument, and despite its decision on detention pending the original trial, it detained the defendant pending his retrial. *Id.* at 67, 70. The court found,

> [S]ince [the defendant] was last on pretrial release he has been convicted by a jury on a first-degree murder charge. He's faced the reality of a life sentence in prison. . . . Even though his conviction was vacated, [the defendant] was still forced to come to terms with the fact that a jury convicted him and that he was sentenced to life in prison. Actually experiencing that, as opposed to the theoretical possibility he felt before his first trial, increases the risk that he will not be present for his next trial, even though he can now present [certain evidence originally excluded].

*Id.* at 67. The court held that the nature and circumstances of the offense "weigh[ed] heavily in favor of [the defendant's] detention pending trial." *Id.*

The district court in that case also found that the weight of the evidence supported the defendant's detention pending retrial. *Id.* The court recognized that the "case [was] unique from other detention proceedings as the Court [did] not need to rely on government proffers or evidence presented at a suppression hearing. The Court heard all of the evidence first-hand." *Id.* The court further recognized that the weight of the evidence was so strong that a jury had already convicted the defendant. *Id.* at 68.

6

Finally, while the court acknowledged the defendant's good behavior in prison, when it reweighed the defendant's history and characteristics—despite all of the incidents occurring prior to the court's original release determination—the court determined that "all of [that] evidence can be considered differently in light of the fact that [the defendant] was convicted by a jury of first-degree murder." *Id.* at 68–69.  The court ultimately concluded "while it is true that he already faced the possibility of a life sentence and showed up for trial the first time, there is a significant difference between being aware of a potential sentence and actually beginning to serve the sentence after it has been imposed," and it detained the defendant pending retrial.  *Id.* at 69–70 (citation and internal quotation marks omitted).  The United States Court of Appeals for the District of Columbia Circuit affirmed. 712 F. App'x at 16; *cf. United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) ("[The defendant's] knowledge that a jury has previously rejected his duress defense and his knowledge of the fact that he was sentenced to a lengthy period of incarceration [of 132 months] makes it more likely that he will flee.").[2]

This case is no different.  Smithers was convicted by a jury following the presentation of evidence over seven days, and he was sentenced to a total term of 40 years of imprisonment.  While Smithers abided by the terms and conditions of his pre-trial release

---

[2] Courts disagree over whether the weight of the evidence is one of the most important or least important factors. *United States v. Shaheed*, 455 F. Supp. 3d 225, 232 (D. Md. 2020) (collecting cases); *United States v. Chase*, No. JKB-19-0473, 2020 WL 2319132, at *4 n.3 (D. Md. May 11, 2020) (declining to take a "position on the relative weight of this factor, and instead tak[ing] it under consideration along with the other factors enumerated in the Bail Reform Act").  While the *Gebro* court found it to be "the least important of the factors," it still considered the weight of the evidence in denying the defendant's motion for release pending retrial.  948 F.2d at 1121–22.

7

pending his original trial, his risk of flight has significantly increased now that the potential for a lengthy sentence has proved a reality. Actually experiencing a 40-year sentence—for serious conduct, including two charges that allege his conduct resulted in the death of Heather Hartshorn—over the past four and a half years "increases the risk that he will not be present for his next trial." *Slatten*, 286 F. Supp. 3d at 67.

And like the case before the District for the District of Columbia, the weight of the evidence supports Smithers' detention. After being discharged from his medical residency in 2013 for making false statements, JA1048–49, 1200–01, Smithers eventually opened a clinic in West Virginia. However, in June 2015, he abandoned it overnight after authorities arrived for an inspection. Regulators later determined Smithers operated an unauthorized pain clinic. JA226–31, 233, 1213–14. By August 2015, Smithers opened the southside Virginia (Martinsville) clinic at issue in this case. JA236, 743, 1057–58, 1174, 1189. Smithers' Virginia clinic did not resemble a legitimate medical practice.

Smithers usually either was not at the office or arrived after lunch. He thus kept pre-signed prescriptions for staff to distribute to patients for $300. Some patients waited 8-to-12 hours, sometimes longer. Smithers also directed staff to mail prescriptions to addresses he provided. He did not accept insurance. His waiting and examination rooms were largely barren, lacked medical supplies, and contained random items like toys, a nightstand, and an inflatable mattress. JA541–42, 548, 550–51, 568, 584, 1895–1901, 1916–17. Every patient received pain pills, even though patients and staff discussed patients selling medication, and acknowledged Smithers' narcotic prescriptions amounted to illicit drugs. JA258, 398, 524, 529–35, 562, 541–43, 546–47, 953, 1225–28, 1937–38.

8

Smithers' patrons came from hundreds of miles away to get his prescriptions. A map (Exhibit 50) locating each patient and prescription covered by the indictment (as well as various pharmacies used) depicted central Appalachia and the Ohio Valley. Clusters of patients whose prescriptions were indicted corresponded to "crews"—groups organized by a sponsor to obtain controlled substances from Smithers. Darryl Williams led one crew near the West Virginia-Kentucky border, and Rick and Rebecca Jessie headed another from Kentucky. Smithers testified his relationship with Williams "was not standard practice." JA1156. Patients slept in the Smithers' parking lot, or undressed or urinated outside; a sign in Smithers' office warned he'd fine them $50 for urinating outside. JA235–38, 659–61, 827, 1910, 1918, 2211.

Smithers did not employ qualified medical staff. He hired a restaurant waiter without medical experience, Juan Angel. Smithers paid him cash to collect patients' cash-payments. Angel testified he found it "very" weird that Smithers' patients came from other states. JA623. Angel conducted drug screenings, but female patients were not observed because there was no female staff. JA528–29, 582–84, 613–23, 1194, 1225. Smithers also hired contractor Peter Bodai (to collect and log patients' fees) when Bodai appeared unannounced after Bodai's prior pain clinic was shut down. JA511–22, 524–28, 553–61, 1194, 1336–1618 (logs). Bodai slept in the office during the workweek and had a sexual relationship with Ohio patient Shannon Kovaleski. He testified at trial that Smithers' clinic was not a "real" doctor's office; he would not go there for a legitimate medical problem. JA537, 542–44, 584, 1901.

A local pharmacist testified he would not fill Smithers' prescriptions. JA240–45. Indeed, Smithers warned patients against using local pharmacies, instead steering them to ones hours away and even requesting they stay open late to accommodate his patients. *E.g.*, JA545, 1223–24, 1226–27, 1941–42, 2297–98.[3]

The Government's brief before the Fourth Circuit further summarized the following evidence adduced at trial: 1) the evidence supporting the 859 distribution counts stemming from Smithers' prescriptions to 50 patients; 2) Smithers' own text messages describing the enterprise; 3) expert testimony; and 4) the evidence supporting the two counts alleging Smithers' conduct resulted in Heather Hartshorn's death. All of this evidence was already sufficient to convict Smithers; and while the jury will need to be instructed differently on retrial due to the change in the law announced by the Supreme Court—similar to the case out of the District for the District of Columbia where additional evidence was required to be permitted during retrial, *see Slatten*, 286 F. Supp. 3d at 68—the weight of the overwhelming evidence supports Smithers' detention.

The remaining factors under § 3142(g) should be considered against the backdrop of the changes since Smithers was originally released on bond in August 2017—that is, 1) the reality of a 40-year sentence rather than just the possibility of a lengthy sentence, 2) the substantial weight of the Government's evidence, 3) Judge Jones's immediate detention of Smithers upon the jury's guilty verdict and his denial of Smithers' motion for

---

[3] Smithers' practice made approximately $680,000 in deposits, and search warrants uncovered $57,000 in his office, car, and home. JA638–54, 1911–15, 1919–23, 1948–51.

reconsideration of bond, *see* 18 U.S.C. § 3143, and 4) as this Court recognized at the status conference, the change from just one count alleged at the time of Smithers' initial detention hearing to now 860 total counts charged against Smithers, two of which allege that Smithers' conduct resulted in the death of Heather Hartshorn and would carry a mandatory minimum sentence of 20 years upon conviction, *see Smithers*, 92 F.4th at 245 n.2. *See Slatten*, 286 F. Supp. 3d at 69. If convicted again, Smithers faces a recommended sentence under the United States Sentencing Guidelines of life imprisonment. *See Smithers*, 92 F.4th at 245 n.2.

Moreover, as to the third factor, Smithers abused his employment to take advantage of dozens of individuals across Appalachia and the Ohio Valley—as well as the opioid crisis that has plagued this district. These factors—against the presumption of detention—evince that no condition, or combination of conditions, can reasonably assure Smithers' appearance pending retrial. *See* § 3142(e).

Even if the Court finds that Smithers has overcome the presumption of detention in this case, the presumption should be considered another factor in this Court's detention determination. *See Stricklin*, 932 F.2d at 1355. "[T]he presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (collecting cases); *see United States v. Crump*, No. 7:22-cr-00016, 2022 WL 796702, at *2 (W.D. Va. Mar. 15, 2022) ("[T]he presumption of dangerousness [for a violation of 21 U.S.C. § 841(a)(1)] represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the

11

imposition of monetary bond or other release conditions." (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (first and third alterations in original))).

As Judge Jones succinctly summarized at Smithers' sentencing hearing, "[In 20-plus years], I've presided over a number of cases with a physician charged with overprescribing narcotics.  This is the worst case that I've ever seen."  JA 1320SS.  Congress has determined that defendants charged with certain violations of the Controlled Substances Act should presumptively be detained.  In this case, Smithers has 860 such charges pending against him.  In conjunction with the nature and circumstances of those charged offenses and the weight of the evidence, the Government respectfully moves for Smithers' detention pending retrial.

**IV.   Conclusion.**

The Government respectfully submits that Smithers has not overcome the presumption of detention in this case.  Even if the Court finds that Smithers has satisfied this burden, the factors set forth under § 3142(g) counsel against Smithers' release.  Accordingly, this Court should detain Smithers pending retrial.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney


/s/ Corey Hall
COREY HALL, AUSA, VA BAR# 94782
RANDY RAMSEYER, AUSA, VA Bar# 33837
M. SUZANNE KERNEY-QUILLEN, SAUSA, VA Bar# 66633
U.S. Attorney's Office
180 West Main Street, Suite B19
Abingdon, Virginia 24210
276-628-4161
276-628-7399 (fax)
E-Mail:USAVAW.ECFAbingdon@usdoj.gov


CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a copy to the counsel of record.

/s/ Corey Hall
Assistant United States Attorney