UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA (ABINGDON)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:17-cr-00027-JPJ-PMS |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| JOEL SMITHERS | ) | |

## RESPONSE TO GOVERNMENT'S MOTION FOR DETENTION

NOW COMES defendant JOEL SMITHERS, by and through his attorney, BEAU B. BRINDLEY, and provides the following response in opposition to the government's Motion for Detention:

## FACTS AND PROCEDURAL HISTORY

A.  Procedural history as it relates to Bond

Mr. Smithers was indicted for over 800 counts of illegal distribution of a controlled substance (including one count resulting in death) outside the usual course of professional practice and without a legitimate medical purpose in violation of 21 U.S.C. § 851. The charges carry a statutory sentencing range of 20 years to life.

Smithers was released on an unsecured bond on the day of his initial arrest, August 15, 2017. Dkt. 11. The defendant's financial assets were frozen by the government and later forfeited. Dkt. 251. While on bond the defendant worked several jobs, including as a delivery driver, plumber's assistant, and farm hand. Dkt. 282 at 32. Employers wrote sentencing letters on his behalf. Dkt. 227 (Sentencing letters of Marjhé Johnston of and Tonya N. Bramblett).

Smithers was convicted on May 09, 2019. His bond was revoked at that time. Dkt. 208. The district court determined that the defendant could not meet the difficult burden of establishing

justification for *presentencing* release under 18 U.S.C. § 3143. In total Smithers was on bond for nearly 2 years. The record reveals no violations during all of that time.

The defendant moved to reconsider bond pending sentencing. Dkt. 213. The district court denied that motion at a May 23, 2019 hearing. Dkt. 223. Smithers requested a furlough to assist his wife in moving after the family was no longer able to afford their home. Dkt. 252. That motion was also denied. Dkt. 253. Shortly thereafter, the defendant filed a motion for reconsideration of bond pending sentencing, during which he expressed his strong belief in the eventual success of his appeal. Dkt. 254. That motion was denied Dkt. 263.

At the time of his sentencing, Smithers's only asset was a 2013 Toyota Sienna (which was repossessed). He holds debts totaling well over $200,000.00. Dkt. 282 at 31. At sentencing it was apparent that Smithers has close family ties. His wife (with whom he has three children and two step children) as well as other family and friends were present. Dkt. 293 at 61.

The defendant was sentenced to 40 years in custody.

B.  Decisions by the Supreme Court and The Fourth Circuit

While Smithers's appeal was pending, the Supreme Court issued its opinion in *Ruan v. United States*, 597 U.S. 450 (2022). The Court held that where a licensed practitioner is charged under §841, the government must establish that the defendant's charged prescriptions were unauthorized and that the defendant "that a defendant knew or intended that his or her conduct was unauthorized." *Ruan*, 142 S. Ct. at 2382.

This represents a significant change from the standard previously imposed by the court. Rather than focusing on whether the prescriptions were issued in what the government or the government's expert believe to be an improper or unreasonable manner, the question is whether the government is able to prove that the defendant subjectively knew the prescriptions were unauthorized because they were not serving a legitimate medical purpose. Indeed, *Ruan* rejected a

standard that was far more lenient than the one imposed by the jury instructions in this case. *Ruan*, 142 S.Ct. at 2381 (rejecting the government's argument that a physician 'can violate Section 841(a) when he makes no *objectively reasonable* attempt to conform his conduct to something *that his fellow doctors would view* as medical care') (emphasis added)).

The government's instant motion once again attempts to cast the error in the instructions issued at Smithers's first trial as somehow minor or technical. The Fourth Circuit rejected that argument. *United States v. Smithers*, 92 F.4th 237, 250 (4th Cir. 2024) ("That instruction directly contravenes *Ruan*; far from helping the government, it proves Defendant's point."). The Fourth Circuit reversed Smither's conviction and found that the government could not establish harmless error. *Id*.

Smithers now stands, once again, presumed innocent under the law. The fact that the government was able to obtain conviction based on what was essentially a strict liability offense does not at all render it more or less likely that they will be able to obtain a conviction under what is now essentially a specific intent offense. As argued below, the strength of the government's case is not nearly as strong as compelling as they endeavor to make it sound. Even if it were, that factor cannot possibly outweigh (1) the defendant's strong family ties, (2) the absence of any criminal history, (3) his complete lack of overseas ties or financial resources, and, most importantly, (4) the fact that we know as a matter of objective fact that Smithers was on bond for nearly two years on the instant case and voluntarily appeared for his verdict knowing that he faced a mandatory minimum of 20 years and a possible life sentence.

C.  Background law

"In our society, liberty is the norm, and detention prior to trial ... is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). "Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the

defendant." *United States v. Santos–Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) (*citing United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985)).

Because Smithers faces a mandatory minimum of over ten years under § 841, he is subject to a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required." 18 U.S.C.A. § 3142.

That presumption puts upon the defendant the burden of *production*. The burden of *persuasion* always remains with the government. *United States v. Drake*, No. 5:22-cr-00008, 2023 WL 213917, at 2 (W.D. Va. Jan. 12, 2023); *United States v. Boyd*, 484 F. Supp. 2d 486, 488 (E.D. Va. 2007)).

 The burden of production is not heavy. It only requires the defendant produce "some evidence" that he does not pose a danger to the community or a risk of flight. *United States v. Stone,* 608 F.3d 939, 945–46 (6th Cir.2010) (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)) (noting a "limited burden of production"); *United States v. Stricklin,* 932 F.2d 1353, 1354-55 (10th Cir.1991) (describing the burden as "not heavy"); "Any evidence favorable to a defendant that comes within the category listed in 18 U.S.C. §3142(g)" can rebut the presumption. *United States v. Rodriguez*, 783 F.2d 702, 707 (7th Cir. 1986).

Once the defendant's burden of production is met, the government bears the burden of establishing by a preponderance of the evidence that *no* combination of conditions could *reasonably assure* the defendant's presence at trial. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (unpublished) (*citing United States v. Rueben,* 974 F.2d 580, 586 (5th Cir.1992)). The statute requires only "reasonable assurance," and not a "guarantee." *United States v. Orta*, 760 F.2d 887, 891-92 (8th Cir. 1985); *United States v. Djoko*, No. CR19-0146, 2019 WL 4849537, at 5 (W.D. Wash. Oct. 1, 2019); *United States v. Chen*, 820 F.Supp. 1205, 1208 (N.D. Cal. 1992) ("Section 3142 does not seek ironclad guarantees").

Even where the government establishes that there is some risk of flight, the court is required to impose "the least restrictive further condition, or combination of conditions," that will reasonably assure these goals. 18 U.S.C. § 3142(c)(1)(B). *Stewart,* 19 F. App'x at 48 (citing *United States v. Rueben,* 974 F.2d 580, 586 (5th Cir.1992); *United States v. Hazime,* 762 F.2d 34, 37 (6th Cir.1985)).; *United States v. Covington*, No. 2:14-CR-00006, 2014 WL 504880, at *4 (S.D.W. Va. Feb. 7, 2014); *United States v. Fox*, No. 22-1043, 2022 WL 2564600, at *3 (2d Cir. July 8, 2022); *United States v. Orta*, 760 F.2d 887, 891 & n.20 (8th Cir. 1985).

**ARGUMENT**

**I.  Smithers Easily Meets His Limited Burden Of Production under § 3142.**

The defendant's burden is not a heavy one. "Any evidence favorable to a defendant that comes within the category listed in 18 U.S.C. §3142(g)" can rebut the presumption. *United States v. Rodriguez*, 783 F.2d 702, 707 (7th Cir. 1986). Under § 3142(f) the Court should consider:

"(1) The nature and circumstances of the offense charged, including whether the offense ... involves a [ ] firearm ...;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including-

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

18 U.S.C. § 3142(g).

The following evidence related to the "history and characteristics" of the defendant are more than sufficient to meet the defendant's limited burden of production"

1.      First, and most importantly, Smithers was on bond for nearly two years prior to his first trial. He abided by every court order and was present at every court appearance. He appeared for the verdict that he knew as a matter of fact would determine, at a minimum, the next 20 years of his life and possibly the remainder of it. Past compliance with conditions of release is a significant factor in the analysis. *United States v. Watkins,* No. CRIM.A. 13-02-KSF, 2013 WL 614252, at 4 (E.D. Ky. Feb. 19, 2013) ("Furthermore, Watkins' ties to the community and his decision to self-surrender on the federal Indictment predominate the analysis on this factor.").

The fact the defendant appeared voluntarily for each court appearance is enough, by itself to meet the defendant's burden of production. *United States v. Cortes*, No. 2:23-CR-00025-TL-5, 2023 WL 3018923, at 2 (W.D. Wash. Apr. 20, 2023) ("Finally, Mr. Cortes points to his limited criminal history to demonstrate his ability to comply with court orders. The Court finds these facts sufficient for Mr. Cortes to meet his burden of production to rebut the presumption as to his risk of flight."); Id. 4 ("Further, Mr. Cortes appears to have complied with all conditions of his supervision in those matters, including an anger management assessment and an alcohol information school."); *United States v. Lazzaro*, No. 21CR01731PJSDTS, 2021 WL 5083978, at *2 (D. Minn. Nov. 2, 2021) ("Lazzaro introduced evidence of his substantial community ties and absence of a criminal record, as well as evidence that he did not flee despite knowing that he was under federal investigation.").

Mr. Smithers's situation and potential motivations today are materially identical to his position and potential motivations while previously on bond. The only exception is that now Smithers's position is markedly *better* because of the *mens rea* requirement *Ruan* imposes. The question will not be whether the government or government's expert believes the prescriptions

were issued in a reasonable manner, but whether *he*, Dr. Smithers, believed those prescriptions to

be authorized. His subjective beliefs are now wholly dispositive.  At the first trial, acting outside of

what other reasonable doctors do mandated conviction regardless of subjective beliefs.  Hence, the

new standard provides a much more favorable possibility of success at trial.  Mr. Smithers can be

more optimistic now than he ever was prior to the first trial for which he appeared.

2.       Mr. Smithers lacks any financial resources or overseas ties. The record amply

demonstrates the Mr. Smithers has no financial resources, and lacks the ability to flee even if he

wanted to. Smithers, for all intents and purposes, is personally indigent[1]. The Court has routinely

granted Smithers's motions for CJA funds, including travel expenses for trial. Dkt. 149, 151.

*United States v. Lazzaro*, No. 21CR01731PJSDTS, 2021 WL 5083978, at 2 (D. Minn. Nov. 2,

2021) ("Ultimately, however, the government has established little more than that Lazzaro is a

wealthy man who is facing serious charges. Needless to say, those circumstances are not—in and of

themselves—sufficient to justify the detention of Lazzaro under § 3142(e)(1). There is no evidence

that (for example) Lazzaro owns a home abroad, or that he has family abroad, or that he has close

ties to a particular foreign country, or that he has made any plans or preparations to flee, or that he

has ever evaded law-enforcement officers.").

3.       Smithers has no criminal history.

4.       Smithers has significant ties to the area where he would be released. His wife, three

children and two step children (the youngest of whom was born while he was in custody) reside in

the area as does his father.

This evidence individually and cumulatively is more than sufficient to meet the defendant's

"limited" burden of production.

---

[1] While the undersigned has been retained to represent Mr. Smithers, the funds for that
representation were provided by Mr. Smithers's family members, and not by Mr. Smithers.

II.    **The government is unable to meet the burden of proving that the defendant poses a serious risk of flight.**

The government's argument for flight stands on the proposition that a defendant who has once been sentenced to a lengthy period of incarceration and seen his conviction overturned by the court of appeals is necessarily a greater flight risk. In support they rely on *United States v. Slatten*, 286 F. Supp. 3d 61, 64 (D.D.C. 2017), *aff'd*, 712 F. App'x 15 (D.C. Cir. 2018).

As an initial point, *Slatten* is obviously (and quite easily) distinguishable on its face. The government's argument in that case was not only risk of flight but danger to the community.[2] The defendant in that case was charged with first degree murder, which carries a mandatory sentence of life. *Id.* 67. He was not taken into custody at an arraignment that took place a matter of weeks before his original trial. *Id.* 65. It is not even clear whether the government *argued* or presented any evidence regarding detention at that hearing. *Id.* The defendant was convicted of first-degree murder.

The D.C. Court of Appeals overturned that conviction, not based on insufficiency of the evidence nor an error in the jury instructions, but because the defendant was prohibited from admitting hearsay statements that could have impacted his defense. *Id*. Unlike the defendant in *Slatten*, Dr. Smithers has *not* been found guilty by a jury of all the elements the government must prove in the wake of *Ruan*. The Fourth Circuit explicitly reserved ruling on whether the evidence the government presented at his original trial was sufficient under the law. *Smithers*, 92 F.4th at 250.

In *Slatten's* bond hearing prior to re-trial, the government presented the district court *additional* evidence beyond the fact of conviction at the original trial. The "incidents" presented by the government "display[ed] a willingness to threaten others and a disregard for rules." *Slatten*, 286

_____

[2] As to Smithers, the government only argues risk of flight.

F. Supp. 3d at 66. The district court heard evidence that the defendant told law enforcement officers that "'that they would need 12 more officers' [presumably to subdue him] and that 'he would rather take a round to his face than go back to jail.'" *Slatten*, 286 F. Supp. 3d at 67 (D.D.C. 2017).

It is a wonder the defendant in *Slatten* was out on bond in the first place. There is no similar evidence with regard to Mr. Smithers. In Mr. Smithers's case the government stands only on the assumption that *any* defendant having experienced the *reality* of a conviction is now *necessarily* more likely to flee. This logic seems counter-intuitive. It seems equally, if not more likely, that having a conviction overturned by the court of appeal provides a defendant with a reason to have greater faith in his eventual exoneration under the system.

Following his conviction Smithers expressed faith that his conviction would be overturned by the Fourth Circuit. Dkt. 254. That proved to be true. Mr. Smithers has not said that he would rather die than go back to prison. He has never threatened anyone attempting to arrest him.

The government's argument is not tailored to any of Smithers's personal characteristics and is not directed at Smithers's individual situation. *See United States v. Cortes*, No. 2:23-CR-00025-TL-5, 2023 WL 3018923, at 4 (W.D. Wash. Apr. 20, 2023) ("Detention determinations must be made individually and, in the final analysis, must be based on the evidence before the court regarding the particular defendant.") (quoting *United States v. Tortora*, 922 F.2d 880, 888 (1st Cir. 1990)); *United States v. Munchel*, 991 F.3d 1273, 1283 (D.C. Cir. 2021). Instead, it seeks to establish a blanket rule that the defendants who have their conviction overturned by the courts of appeal should not be given bond. That is not the law.

In response to the government's citation to *Slatten*, *Smithers* directs the Court's attention to *United States v. Henson,* No. 16-10018-01-JWB (2016 D.KS.). Henson, like Smithers, was a registered practitioner licensed to distribute controlled substances under the CSA. He, like Smithers, was convicted of issuing unauthorized prescriptions (including one resulting in death),

under 841. Henson was sentenced to life without parole. Like Smithers, Henson's convictions were overturned following *Ruan*. *United States v. Henson*, No. 19-3062, 2023 WL 2319289, at *1 (10th Cir. Mar. 2, 2023).

The government argued that Henson should be detained pending re-trial. *Henson*, Dkt. 606, 614, 618. The government made the exact same argument that the government advances to this court: the fact of prior sentence and conviction renders his flight more likely. Dkt. 606. The magistrate and the district court repeatedly rejected that argument. *Henson*, Dkt, 612 (Order setting conditions of release); Dkt. 615 (Transcript of Hearing); Exhibit A (Dkt. 617, District Court's denial of Government's Motion to Revoke Magistrate Order); Dkt. 626 (District Court's Denial of Motion to Reconsider).

The magistrate found (and the district court agreed) that the "[d]efendant's performance on release for over two years before his trial [] was the best evidence pertaining to flight.". Exhibit A ("Significantly, Defendant was on pretrial release in this case for over two years, did not violate the conditions of release").

It is undisputed that Smithers was on bond for nearly two years. It is undisputed that Smithers was present at every court appearance. He knew that he faced a mandatory minimum of 20 years and a possible life sentence. The circumstances are in all material respects unchanged. The only basis the government gives for believing that Smithers would not be able/willing to do now what he successfully did before is the speculation that any defendant must feel a greater existential urgency to avoid prison after having once experienced it. But a reasonable person in the defendant's position, who has already been successful in the court of appeals, has no money, no means to flee, and a family to which he desperately wishes to return, would know he has a better chance of fighting his case than in evading the FBI and US Marshalls for the rest of his life at the risk of a mandatory *additional* and consecutive five years in custody for flight.

The government relies on the fact that the defendant is charged with a serious offense and the presumption of risk of flight remains a factor even when it has been rebutted. *United States v. Hill,* CRIM 106CR82–1, 2007 WL 547611 1 (N.D.W.Va. Feb.16, 2007). Smithers acknowledges he is charged with a serious offense. He knew that when he was on bond previously. He knows that today. That factor alone cannot be dispositive: "Of course, drug trafficking is a serious crime and endangers the community, but detaining a person merely based on the accusation of such a crime would be to ignore the existence of the rebuttable presumption specifically created by Congress." *United States v. Cortes*, No. 2:23-CR-00025-TL-5, 2023 WL 3018923, at 3 (W.D. Wash. Apr. 20, 2023)

In the context of the specific underlying facts related to the charges in this case, that presumption should carry very little weight. "The rebuttable presumption in drug-trafficking cases is statutory and arises out of Congress' concern that individuals involved in drug trafficking often have foreign contacts and the ability to leave the country, and incentives to remain active in the drug trade." *United States v. Disher,* 650 F.Supp.2d 1131, 1136 (D.N.M.2009) (Browning, J.) (citing *United States v. Moreno,* 30 F.3d 127, at 2 (1st Cir.1994)). Smithers's case doesn't involve any overseas contacts. The nature of the conduct charged against Dr. Smither's does not suggest that he is even likely to have such contacts.

The government relies on the strength of their case. The degree of weight this factor should be given is a matter of some controversy among the circuits:

"Some courts have considered it the least important factor, while others consider it one of the most important factors. *See*, *e.g.,United States v. English*, 629 F.3d 311, 317 (2d Cir. 2011) (affirming detention order by judge who observed that the weight of the evidence "is one of the most important factors"); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (finding the weight of the evidence factor to be the least important of the four factors); *United States v. Tapia-Garcia*, No. 19MJ3905-JLB-WQH, 2019 WL 4963011, at 2 (S.D. Cal. Oct. 8, 2019) (noting that the weight of the evidence is "the least important factor"); *see also United States v. Calabrese*, 436 F. Supp. 2d 925, 927 (N.D. Ill. 2006) (stating that the finding in *Gebro* and other cases that "the weight of evidence is least important is ... an off-key but well-

intentioned attempt to remind us of the rule that detention is not to be ordered simply because we are convinced that the accused is guilty .... [T]he weight of evidence may or may not be important, but no absolute rule governs")

*United States v. Shaheed*, 455 F. Supp. 3d 225, 232 (D. Md. 2020). *See United States v. Basenback*, No. CR 3:23-00155, 2023 WL 6796203, at 2 (S.D.W. Va. Oct. 13, 2023) ("Although there is no Fourth Circuit authority on point, this Court joins other district judges within this Circuit and weighs the factor "equally" among its colleagues.").

Whether the least important factor or the most important factor, the perceived strength of the government's case is not alone sufficient to justify detention. The government may believe their case to be strong. The defendant does not share that belief.

As the defendant argued in appeal, following *Ruan,* the strength of the government's case is not what they hope it to be. All of the patients about whom the government presented evidence at Smithers's original trial suffered from significant medical conditions. **Smithers spent considerable time (between one and two hours) with patients.** JA574. Smithers discharged a number of patients from his practice because of failed urinalysis or on suspicion of diversion. *See, e.g.,* JA431. Patient-witnesses testified that they lied to Smithers regarding their degree of pain or their need for the medication. *See, e.g.,* JA255-56; 417-423. He did not automatically turn patients away for failure to pay. JA575. He *often* reduced medication based on his research and understanding of the patient's conditions. JA330; 947. He hired a company that advertised expertise in conducting compliance checks on patients who are taking long-term controlled substances prescriptions to conduct urinalysis and pill counts. JA576-77.

The government casts the text messages with Mr. Williams as particularly incriminating. Prior to *Ruan* they may have been. After *Ruan* they are not. They are exculpatory. At all times (including after Smithers discharged Williams for a failed urinalysis test) Williams was representing to Mr. Smithers that he was suffering from pain and that the patients he refers to

Smithers are suffering real pain. JA2169 ("It might make you happy to know that since Monday I have barely been able to stand straight or walk without limp. ... I'm in excruciating pain."); "Glad to be able to help. Thanks for finding others *who need the assistance*." JA2351 (emphasis added).

The government makes much of the fact that Smithers or his employees supervised male patients during their urinalysis but only listened at the door to the bathroom when women were taking their urinalysis test. It is very difficult to see that as anything other than exculpatory. The undersigned is not aware of any government expert, including the one in the instant case, who testified that it is either required or standard practice to supervise urinalysis at all.

The fact that an employee of Dr. Smithers was sleeping with a patient may not speak highly of the professionalism with which his office was run. But in the context of *Ruan*, it is exculpatory. According to testimony at trial Smithers was unaware of that relationship and the patient entered the relationship to get prior notice of when she would be subject to random drug screens in order to manipulate the results.

All of the evidence presented at trial establishes that the patients either had legitimate need for the pain medication or that they lied about their symptoms to trick Smithers into believing as much. Smithers implemented protocols, and acted on those protocols, to discharge patients who showed signs of abuse or addiction. This is not the slam dunk that the government hopes it to be.

Even if the seriousness of the offense and the strength of the government's case have moderate weight in favor of detention, the individual characteristics of the defendant counsel strongly in favor of bond. The defendant has no criminal history. A lack of criminal history and ties to the community are often sufficient to justify bond even in 841 cases. See, e.g., *United States v. Gonzalez*, No. 10-0693, 2010 WL 4861441, at 4 (E.D. Pa. Nov. 29, 2010)

Smithers has a wife and five children. His commitment to that family is demonstrated by the great lengths he went to provide for them after his medical practice was shut down. He took jobs as

a plumbing assistant and as a farm hand. Both employers wrote sentencing letters on his behalf. *United States v. Sam*, No. CR 15-3051 JB, 2015 WL 7800933, at 7 (D.N.M. Nov. 6, 2015) ("Case law states that a defendant's strong community ties suggest that he poses less of a flight risk and danger to the community.") (citing *United States v. Robertson,* 2008 WL 2565015, at 2 (D.N.D. June 24, 2008); *United States v. Thomas,* 2006 WL 140558, at 7 (D.Md. Jan. 13, 2006). In fact, if anything, he now has one more child, whom he has never met outside of prison confines, and therefore one more reason to stick around through the trial. Presumably, he would like the opportunity to get to know her.

Smithers lacks the financial resources to flee even if he wanted to. See *United States v. Sam*, No. CR 15-3051 JB, 2015 WL 7800933, at 7 (D.N.M. Nov. 6, 2015) ("[defendant] also possesses few resources to flee."). Most importantly, and at the risk of belaboring the point: He submitted himself to the judgement of the jury under the exact same circumstances he now faces.

**III.    The government has not established that no conditions short of incarceration could reasonably assure the defendant's presence at trial.**

The government bears the burden of establishing not only that Dr. Smithers poses some risk of flight, but that no conditions or combination of conditions could reasonably assure his presence at court. 18 U.S.C. § 3142(e); *United States v. Perry,* 788 F.2d 100, 106 (3d Cir.1986); *United States v. Knight*, 636 F. Supp. 1462, 1468 (S.D. Fla. 1986); *United States v. Fox*, No. 22-1043, 2022 WL 2564600, at *3 (2d Cir. July 8, 2022) ("Finally, we note that, as in the district court, the Government has failed to explain why the stringent release conditions imposed by the district court would be insufficient to prevent Fox from evading surveillance in a manner that would permit him to engage in the kind of non-consensual, drug-induced, violent sex that forms the basis of the allegations against him undetected."); *United States v. Watkins, No. CRIM.A. 13-02-KSF, 2013 WL 614252, at 4 (E.D. Ky. Feb. 19, 2013) ("*Although Officer Hart's testimony indicates that Watkins

may have access to large sums of cash, and therefore the means to flee, there are conditions that could be imposed to ensure his appearance in court."); *United States v. Kelley*, No. 23-CR-0327-JRR, 2023 WL 8090632, at 1 (D. Md. Nov. 21, 2023) ("[T]he Bail Reform Act requires that a court impose the '*least* restrictive further condition, or combination of conditions" that "will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" 18 U.S.C. § 3142(c)(1)(B) (emphasis by the Court).

The undersigned believes that under these circumstances the unsecured bond and conditions of release to which Smithers was originally subject are sufficient to assure his attendance at trial. However, it merits note that the government has not and does not explore or explain why other conditions would be insufficient to ensure his compliance. The defendant very much wants to work while awaiting trial. He did so successfully prior to his first trial. However, if the court requires additional assurances, the defendant could be placed on home monitoring, assigned a third party custodian, or subject to other additional conditions as this Court deems appropriate.

**IV.   Denying the defendant bond on the basis of a vacated conviction would deny the defendant His Eighth Amendment right against "excessive bail" and violate the Due Process Clause of the Fifth Amendment.**

The appellate court reversed Smithers's convictions. Smithers now stands, once again, innocent under the law. *United States v. Kelley*, No. 23-CR-0327-JRR, 2023 WL 8090632, at *1 (D. Md. Nov. 21, 2023) ("In every case where the government seeks for a person to be detained while awaiting trial—to detain a person who, by definition, is presumed innocent of the charges— the government bears … in *all* cases the burden of persuasion that *no* condition or combination of conditions will reasonably assure appearance and community safety remains with the government.") (emphasis in original). The Eighth Amendment prohibits the imposition of "excessive bail."

15

The defendant objects strongly to the type of argument made by the government in this case. As described by the Supreme Court and the Fourth Circuit, the jury instructions issued in Smithers's original trial did not require the government to prove the elements of the offense with which he was charged. The Fourth Circuit found that this error was not harmless. However understandable that error, it was one that deprived the defendant of his Sixth Amendment right to a jury trial of his peers. That is an injustice, even if not an intentional one. To say that *because* of that injustice the defendant is no longer eligible for Bond smacks of "sentence first trial later". *Bell*, 441 U.S. at 536-37 ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."). While the undersigned has not yet located a case directly on point, such a rule would result in a situation where the mere fact that a defendant has been subject to an injustice renders him ineligible for release while awaiting a fair trial. Indeed, *United States v. Salerno*, 481 U.S. 739, 755 (1987) upheld the bail reform act precisely *because* of the safeguards in the statute that mandate individual consideration. *Id.*

The defendant has proven that he can successfully be on bond when charged with these specific offenses. That type of strong evidence in favor of bond is rarely available to the courts. In that sense the court took more of a risk by placing Smithers on bond in the first instance: it had no direct evidence of how he would perform under court supervision.

The government has pointed to no change in circumstances other than the fact that the defendant was sentenced for an offense without the government having been required to prove the correct elements. The logical extension of that argument is incredibly dangerous, and the parade of horribles is not particularly difficult to imagine. The effect would be that once the government has secured an unjust conviction, the defendant forfeits his right to bail after the injustice is recognized by the courts, precisely because of the injustice.

16

Such a presumption is not sound as a matter of logic or human experience, but even if it were, it is one that the courts should reject. The defendant in this particular case did well on bond prior to his first trial. He should not be punished because the jury instructions at that trial were infirm.

Respectfully submitted,

s/Beau B. Brindley
_____
Beau B. Brindley
Attorney for Joel Smithers
53 W Jackson Blvd Ste. 1410
Chicago, IL 60604
(312)765-8878

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2024, I electronically filed the above

Motion with the Clerk of Court using the CM/ECF system, which served to all listed

parties in the case.

s/ Beau B. Brindley
53 W Jackson Blvd Ste. 1410
Chicago, IL 60604
(312)765-8878