# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Case No.: 1:17-CR-00027 |
| | ) | |
| **JOEL A. SMITHERS** | ) | |

## GOVERNMENT'S REPLY IN SUPPORT OF GOVERNMENT'S MOTION FOR DETENTION OF JOEL A. SMITHERS

In response to the Government's position in support of its motion for detention, Joel A. Smithers submits he should be released following remand because of his: 1) strong family ties, 2) lack of criminal history, 3) lack of financial resources and overseas ties, and 4) previous release "on bond for nearly two years on the instant case and voluntary[y] appear[ance] for his verdict knowing that he faced a mandatory minimum of 20 years and a possible life sentence." ECF No. 348 at 3. However, Smithers has failed to overcome the presumption "that no condition or combination of conditions will reasonably assure" his appearance before this Court, and he should be detained pending retrial.[1]  18 U.S.C. § 3142(e)(3).

**1.** While the Government acknowledges that Smithers appeared before the Court while on bond for his original trial, since that time, Smithers has witnessed the presentation of evidence over the course of several days, been convicted of 860 counts

---

[1] References herein to "JA" are to the "Joint Appendix" filed before the Fourth Circuit on Smithers' appeal. Case No. 19-4761, ECF No. 54

charged against him by a jury, had his bond immediately revoked upon the return of the jury's verdict, and been sentenced to—and begun—a term of imprisonment of 40 years. Thus, Smithers' contention that his "situation and potential motivations today are materially identical to his position and potential motivations while previously on bond" flies in the face of the material changes in circumstances since his original release. ECF No. 348 at 6.

As an initial matter, Smithers did not "voluntarily" appear before the Court while on bond. *Id.* at 3, 6. Rather, he was *required* to do so as a condition of his release. ECF No. 11 at 1. Smithers further maintains that he "appeared for his verdict *knowing* that he faced a mandatory minimum of 20 years and a possible life sentence." ECF No. 348 at 3 (emphasis added). However, Smithers failed to appreciate the gravity of the proceedings, and any potential sentence, at his original trial. On the fourth day of trial, when Smithers made yet another complaint against his counsel, Judge Jones observed, "Mr. Smithers is, from all I can gather in this case, very naive about legal proceedings. He has unrealistic expectations about the situation." JA 597–98.

Despite any lack of understanding at his original trial, after having now been convicted of 860 counts charging him with violations of the Controlled Substances Act, Smithers fully appreciates the ramifications of appearing throughout retrial, amplifying the risk that he will fail to appear if released. Further, Smithers is aware that a similarly

situated physician, Shakeel Kahn, represented by Smithers' current counsel, was retried based on the Supreme Court's *Ruan* ruling and, again, was found guilty.[2]

Smithers also relies on *United States v. Henson*, where, following a post-*Ruan*[3] remand, the court released the defendant on bond pending retrial. Case No. 6:16-cr-10018-1 (D. Kan. 2023) at ECF Nos. 595, 611, 612, 617, 626. In that case, the defendant was originally released on bond following the return of a 31-count indictment, largely for violations of the Controlled Substances Act which included a charge for distribution resulting in death. *Id.* at ECF Nos. 1, 29. The defendant's life sentence was ultimately vacated upon the parties' agreement that the jury instructions failed to follow the standard set forth in *Ruan*, and the matter was remanded for a new trial. *Id.* at ECF Nos. 434, 595.

Following remand, the court in that case denied the government's motion for detention, in part relying on the defendant's performance on bond awaiting his original trial. *Id.* at ECF Nos. 615, 617. However, the court also relied on: 1) the defendant's appearance at sentencing, as the court allowed him to remain on bond following the jury's return of a guilty verdict on the majority of the charges; 2) the defendant's strong ties to the Kansas community, that is, the location of the retrial, and his proposed plan to remain in Kansas if released; and 3) the defendant's age and health concerns. *Id.*

Such factors are not present here. This Court, as opposed to the court in *Henson*, immediately detained Smithers upon the jury's return of a guilty verdict on all counts

---

[2] Khan's retrial was a directly result of *Ruan,* as that opinion was a disposition of both *Khan v. United States* and *Ruan v. United States*. 597 U.S. 450 (2022).
[3] *Ruan v. United States*, 597 U.S. 450 (2022).

charged. ECF No. 208. The Court reached its decision "[b]ased upon the evidence" and because Smithers had been "found guilty of an offense described in subparagraph (C) of 18 U.S.C. § 3142(f)(1)" and "the conditions set forth in 18 U.S.C. § 3143(a)(2) ha[d] not been met." *Id.* Moreover, Smithers' only ties to this district result from the pain clinic he operated in Martinsville, Virginia—and from which the 860 counts charged against him arise. And again, unlike the defendant in *Henson*, Smithers does not appear to propose to reside within the district if released on bond, but rather hundreds of miles away in Texas.[4] Smithers further presents no argument or evidence that any serious health condition justifies pretrial release.[5] And finally, this Court released Defendant originally on bond with only one count charged against him. Now, he has 860 charges pending, including two charges alleging that his conduct resulted in the death of Heather Hartshorn—which were not pending against him at the time of his original release.

The applicable cases upon which both the Government and Smithers rely are, admittedly, persuasive authority. The facts of this case, however, more closely align with those presented in *United States v. Slatten*, 286 F. Supp. 3d 61 (D.D.C. 2017), *aff'd*, 712 F. App'x 15 (D.C. Cir. 2018), and the authority upon which the *Slatten* court relied, *see id.* at 67 (citing *United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991)). *See also id.* at

---

[4] Smithers further relies on a series of cases in support of his assertion that his "ties to the community" justify release. ECF No. 348 at 7, 13–14. However, these cases involve defendants with ties to the charging district and surrounding area—not a community well-outside not only the district but this circuit. *See id.* (collecting cases).

[5] The other cases upon which Smithers relies were not following remand after the defendants' convictions and sentenced were vacated, and Smithers' reliance on such cases is misplaced. ECF No. 348 at 6–7.

69 ("The first three factors described above [the nature and circumstances of the charged offense, the weight of the evidence, and the defendant's history and characteristics] demonstrate by a preponderance of the evidence that Mr. Slatten poses a risk of flight. . . . The Court's finding regarding Mr. Slatten's risk of flight is sufficient to support detention pending retrial.").

**2.**     Smithers lacks a viable home plan, which magnifies his risk of flight. The Probation Office reported on March 27, 2024, that Smithers intends to reside with his wife, three children, and two stepchildren in a recreational vehicle located in a trailer/camper park in Texas. ECF No. 349 at 3. First, as Smithers reported to the Probation Officer, Smithers' wife "works long hours with few days off." *Id.* Ms. Smithers reported similarly to the Probation Officer when he spoke with her on March 22, 2024, and she has since failed to return his call to discuss Smithers' release plan. *Id.* Thus, Ms. Smithers will likely be unable to monitor Smithers if he is released—and prevent him from fleeing.

In addition, Ms. Smithers was involved in Smithers' practice, occasionally working at the front desk, assisting patients with questionnaires, and taking patients' vitals. JA 1073, 1079, 1155, 1182, 1196. In addition, Ms. Smithers received wires and messages from crew leaders in relation to payment for Smithers' prescriptions. JA 1189–90, 2130, 2146–47, 2475. Based on her role in Smithers' illicit prescribing practices, and given the risk Smithers will flee pending retrial, Ms. Smithers would not be a suitable third-party custodian if Smithers were released on bond.

Neither would Smithers' father. At the status conference on March 7, 2024, Smithers suggested he would reside with his father in Texas if released. However, the

5

Government understands that Smithers' father travels frequently outside the home and, as a hunter, has several firearms at his residence. Moreover, ahead of sentencing, Smithers detailed conduct by his father that, if believed, clearly show his father would not be a suitable third-party custodian.[6] ECF 275 at 4.

**3.** As to Smithers' Eighth Amendment argument, he first concedes that no court has held that detaining a defendant following remand violates the excessive bail provision. ECF No. 348 at 16. Furthermore, Smithers distorts the Government's position. Smithers asserts that the Government posits that he should be denied bond "on the basis of a vacated conviction." *Id.* at 15. However, as the Government has continued to maintain, Smithers should be detained pending retrial based on the presumption of detention, the nature and circumstances of the charged offenses and the weight of the evidence against Smithers — that is, the presumption and factors set forth under § 3142.[7] ECF No. 341 at 1. And as the United States District Court for the District of Columbia (as affirmed by the United States Court of Appeals for the District of Columbia Circuit) and the United States Court of Appeals for the Ninth Circuit similarly recognized, the fact that Smithers has been convicted of the 860 charges against him and actually began experiencing a 40-year

---

[6] The risk that Smithers will fail to appear before the Court throughout the next several months is further exacerbated by any proposed plan to reside in Texas—well-outside the Western District of Virginia. Of note, pending his original trial, Smithers resided in North Carolina while on pre-trial release. At a hearing before the Court on defense counsel's motion to withdraw filed 10 days before trial, Smithers claimed counsel was unprepared and blamed his inability to meet with counsel, in part, because of his residence in North Carolina. JA 215O–215R.

[7] Smithers agrees that the standard set forth under § 3142 applies here. ECF No. 348 at 3–5.

sentence can be considered in this Court's detention determination and analysis under § 3142.

**4.** Finally, like the Government, Smithers submits that the Court should consider the changes in circumstances since Smithers was originally released on bond—namely, that his "position is markedly better because of the *mens rea* requirement *Ruan* imposes." ECF No. 348 at 6 (first emphasis omitted). However, while the jury must be instructed differently post-*Ruan*, a jury already considered and rejected Smithers' testimony—spanning over 200 pages of trial transcript, JA 1043–1253—"that he believed there was a legitimate medical purpose for each of the prescriptions" at issue, *United States v. Smithers*, 92 F.4th 237, 251 (4th Cir. 2024).[8] The Fourth Circuit recognized that "much of [Smithers'] testimony wasn't particularly convincing, as weighed against the prosecution's evidence. And a jury might very well not have believed Smithers' testimony that he was acting with a legitimate medical purpose." *Smithers*, 92 F.4th at 251.

The weight of the changes since Smithers' original release on bond in August 2017, as well as the impact of those changes on the factors set forth under 18 U.S.C. § 3142(g)[9],

---

[8] Smithers maintained at his initial trial that he was a competent and trained physician who prescribed the controlled substances at issue legitimately. *See Smithers*, 92 F.4th at 251; JA 1090–91, 1196. At his sentencing, Smithers argued he lacked appropriate medical experience and training and offered evidence suggesting he suffered from a mental illness, all of which impaired his judgment. JA 1320T; ECF No. 275; *cf.* JA 1320SSS ("It is contended that he simply made mistakes, bad judgment, bad choices out of a failure to have adequate medical training. Of course, as we've heard, Dr. Smithers was expelled from his medical residency for lying to a police officer that he was on a medical emergency after he had been pulled over and was suspected of drunk driving.").

[9] Contrary to Smithers' assertions in his response that he lacks any overseas ties, the Probation Office reports that Smithers previously traveled, as an adult, to Canada and the British Virgin Islands. *Compare* ECF No. 348 at 7, *with* ECF No. 349 at 3. Furthermore, his contentions that he

7

support Smithers' detention pending retrial.  For example, the Court can—and should—consider Smithers' abandonment of his clinic in West Virginia the day after authorities arrived at his facility to investigate his practices and the weight of the evidence presented in the previous trial, in determining whether any condition or combination of conditions will assure his appearance before the Court over the course of the retrial proceedings.

In all, contrary to Smithers' contention that the Government's theory for detention would hold true for any person whose conviction is vacated, the Government's argument is appropriately—and necessarily—tailored to address Smithers' own conduct and risk of flight pursuant to the presumption and factors set forth under § 3142.

*****

Ramona Hartshorn, the mother of Heather Hartshorn—who the jury found died as a result of controlled substances prescribed by Smithers, ECF No. 205—provided the following statement, in part, at Smithers' sentencing hearing:

> When I first received my letter from the Department of Justice regarding my daughter and the court case against Dr. Smithers, I was unaware of any of the details and the extent of my daughter's involvement in the case.  Unfortunately, my husband had filed for divorce 11 months before my daughter passed and I had no communication with him regarding any matters that I was once privy too.
>
> After my daughter passed away on the morning of February 22nd, 2017, I was still not kept informed of many of the details surrounding her death.
>
> Upon her death, I was thrown into a deep, dark depression.  During that time I resigned from my position as a full-time teacher and elected to

---

"lacks any financial resources" is negated by his reports that he is "unsure of his family entire financial situation" and that his brother and father have assisted him financially throughout the course of his appeal and plan to do so during retrial.  *Compare* ECF No. 348 at 7, *with* ECF No. 349 at 4.

> apply for my retirement and social security. Days and months went by and I was like a zombie. I was unable to feel or see the beauty in anything. My battle with severe depression lasted for well over a year. I was in and out of psychiatric facilities at the request of my family and friends because I had become very suicidal and unable to cope with the way the disruption that had come upon my family.
>
> I lost 90 pounds and had to be force fed food. I was unable to care for the two precious children that my daughter left behind because I couldn't even take care of myself.
>
> With the help of God, my family, and my friends, I was able to return to work as a substitute teacher about 14 months after she passed. I still battle with post-traumatic stress due to the fact that I found my daughter that morning. . . .

JA 1320SS–TT. While the Government appreciates Smithers' desire to return to his family pending retrial, Ms. Hartshorn will never be able to reunite with her daughter. Her statement demonstrates that Smithers' conduct not only impacted his patients, but a web of countless associated family and friends. Smithers has now not only faced the reality of the jury's verdict, and the reality of a 40-year sentence, but the reality of the impact of his total conduct.

As Judge Jones recognized, "[Smithers is] and was clearly competent. Even accepting that he used poor judgment and made poor choices, he knew what he was doing. He knew that it was unlawful and that he was profiting from the misery of these victims who came to him for drugs." JA 1320WWW–XXX. For all these reasons, and for the reasons set forth in the Government's position in support of its motion for detention, ECF No. 341, the Government respectfully submits that Smithers has not overcome the presumption that no condition or combination of conditions can reasonably assure his appearance before this Court. Moreover, in conjunction with the presumption, the nature

and circumstances of the 860 charged offenses and the weight of the evidence against Smithers further support his detention pending retrial.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney


/s/ Corey Hall
COREY HALL, AUSA, VA BAR# 94782
RANDY RAMSEYER, AUSA, VA Bar# 33837
M. SUZANNE KERNEY-QUILLEN, SAUSA, VA Bar# 66633
U.S. Attorney's Office
180 West Main Street, Suite B19
Abingdon, Virginia 24210
276-628-4161
276-628-7399 (fax)
E-Mail:USAVAW.ECFAbingdon@usdoj.gov


CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a copy to the counsel of record.

/s/ Randy Ramseyer
Assistant United States Attorney