CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
November 24, 2024
LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
      DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Case No. 1:17CR00027 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **JOEL A. SMITHERS** | ) | JUDGE JAMES P. JONES |

*Corey Hall*, Assistant United States Attorney, Abingdon, Virginia, for United States; *Beau B. Brindley*, Chicago, Illinois, for Defendant.

In this criminal case the government has filed a Motion in Limine to Exclude and/or Limit Proposed Expert Testimony. The motion has been argued and is ripe for review. For the following reasons, I will grant in part and deny in part the motion.

## I.  BACKGROUND.

Defendant Joel A. Smithers, a former physician, seeks to introduce the expert testimony of James Patrick Murphy, M.D., at his upcoming trial. In 2019, Smithers was tried and convicted on charges under the Controlled Substances Act. The Fourth Circuit vacated his convictions following the Supreme Court's decision in *Ruan v. United States*, 597 U.S. 450 (2022), and remanded his case for a new trial. *United States v. Smithers*, 92 F.4th 237, 240 (4th Cir. 2024).

Dr. Murphy practices medicine in Louisville, Kentucky. He is board-certified in Anesthesiology, Pain Medicine, and Addiction Medicine and licensed to practice

in Kentucky and Indiana. He has extensive experience in the fields of medicine in which he is certified. The government does not challenge Dr. Murphy's credentials.

Dr. Murphy prepared an Expert Witness Report (Report) dated August 12, 2024. The Report concluded that the prescriptions that Smithers issued for controlled substances "were issued for a legitimate medical purpose and in the usual course of professional practice." Mot. Lim. Exclude Expert Test. Ex. 1, Report 1, ECF No. 424.

Based on the Report, the government has moved to exclude Dr. Murphy's testimony at trial on the ground that it does not meet the standards of *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1993). In the alternative, it moves to prohibit Dr. Murphy from testifying as to (a) criminal charges relating to patients of the defendant whose records he did not review; (b) his own legal conclusions; (c) the defendant's state of mind; and (d) certain unsupported conclusory opinions and those that are outside his areas of expertise. I will grant in part and deny in part the motion.

## II. STANDARD OF REVIEW.

*Daubert* provides the basic analytical framework for determining the admissibility of expert testimony. Under *Daubert*, the court acts as a gatekeeper by ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. "[T]he trial judge's general 'gatekeeping'

obligation [] applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). The trial court's inquiry into admissibility is "a flexible one" and the court's analysis will "depend[ ] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* at 150 (internal quotation marks and citation omitted). More generally, cases after *Daubert* have shown that "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 (advisory committee's note to 2000 amendment).

The principles of *Daubert* and its progeny are reflected in the Federal Rules of Evidence, which allow expert evidence under certain circumstances:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . .:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

As stated by the advisory committee:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

Fed. R. Evid. 702 (advisory committee's note to 2000 amendment). The reality is that "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* (quoting *United States v. 14.38 Acres*, 80 F.3d 1074, 1078 (5th Cir. 1996)). As noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596.

### III. DISCUSSION.

#### A. *Daubert* Requirements.

Dr. Murphy bases his expert report on his review of the medical files of forty-one of the patients identified by their initials in the Second Superseding Indictment. Report 4, ECF No. 424. He also reviewed files on eight patients not mentioned in that indictment, and the reports of Deenie Bassam, M.D., and Stacey L. Hail, M.D. *Id.* The latter are other expert witnesses proposed by the defendant.

The government argues that Dr. Murphy's testimony should be excluded in its entirety because he relies on insufficient data and facts. It argues that his

testimony should also be excluded because he did not use a reliable methodology or reliably apply that methodology to the facts.

To support its argument on insufficient facts and data, the government cites Dr. Murphy's statement in his report that he did not review the patient records of nine of the fifty individuals identified in the Second Superseding Indictment. Dr. Murphy still concluded that "the prescriptions for opioid pain medications were based on reasonable clinical judgment, were medically necessary and issued by Dr. Smithers for a legitimate medical purpose in each case." *Id.* at 7. Dr. Murphy also did not review the records of DR, who the government argues had never seen the defendant as a patient, visited the defendant's clinic, or requested or received the prescriptions that the defendant issued in her name. But Dr. Murphy wrote that the defendant "was always able to perform the 'observation' portion of a physical exam with each patient at each encounter." *Id.* at 11. The government argues further that Dr. Murphy does not explain in his report what records he relied on to determine that the prescriptions were legitimately issued to other patients.

At argument on the present motion, defense counsel stated that the expert had now been provided the records for the nine remaining patients. He reviewed them, and counsel indicated that Dr. Murphy will provide an updated report that addresses those files.

-5-

As defense counsel argued, the government's issue with Dr. Murphy is better classified as an issue with the weight that a jury should afford his testimony, rather than with its admissibility. Whether Dr. Murphy considered all of the relevant facts sufficient to state a credible opinion on whether Smithers' prescriptions were issued for a legitimate medical purpose is a matter for the jury, based upon all of the evidence in the case.

The government also argues that Dr. Murphy's testimony is not the product of a reliable methodology or based on a reliable application of that methodology to the facts. The government cites language from multiple sources on which Dr. Murphy relies that it contends is contradictory to his conclusions. It also argues that Dr. Murphy relies on principles developed during the coronavirus pandemic, which occurred two years after the conduct charged. The government further argues that Dr. Murphy does not rely on updated methodology that contradicts his opinions. And it argues that Dr. Murphy has not remedied these deficiencies in his methodology despite having been made previously aware of these deficiencies in previous trials. Mot. Lim. Exclude Expert Test. 11, ECF No. 421.

Again, the issues that the government has with Dr. Murphy's methodology are better characterized not as admissibility issues but as credibility issues. Indeed, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 (advisory committee's note to 2000 amendment). And "the trial court's

role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* (quoting *14.38 Acres*, 80 F.3d at 1078). The government's challenge to Dr. Murphy's credibility can be developed at trial.

### B. Testimony as to the Nine Patients Whose Records Dr. Murphy Did Not Review.

The government argues, in the alternative, that Dr. Murphy should not be permitted to testify on charges relating to the nine patients whose records he did not review. However, as stated above, Dr. Murphy was recently provided those records and promises to submit an updated report.

The government raises an issue of the defendant's timeliness in the submission of the updated report that reflects the additional patient records. However, it has not demonstrated at this point that it will be unfairly prejudiced by the submission of an updated report. As a result, if properly provided, I will not exclude Dr. Murphy's testimony as to the nine patients.

### C. Testimony as to Conclusions of Law.

The government argues, in the alternative, that Dr. Murphy should be prohibited from testifying as to his opinions on legal issues. These opinions include his own interpretations of federal regulations to provide legal definitions of what constitutes the "[u]sual [c]ourse of [p]rofessional [p]ractice" and "the [s]tandard of [c]are." Mot. Lim. Exclude Expert Test. 13, ECF No. 421. Another legal issue to which the government seeks to prohibit Dr. Murphy from testifying is whether there

are "legal disputes" on "whether [21 C.F.R. § 1306.04] defines the scope of a doctor's prescribing authority" as to violations of 21 U.S.C. § 841. *Id.* at 14. The last issue on which the government seeks to prohibit testimony is his opinion on whether the defendant was "required to follow the law, or that any deviation from the law was ethically permissible" because professional health care standards may conflict with the law. *Id.*

Legal conclusions are beyond the proper role of an expert witness and would supplant the jury's role in evaluating and determining the facts. *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002) (noting that "[e]xpert testimony that merely states a legal conclusion is less likely to assist the jury in its determination"). I will not permit Dr. Murphy to testify as to the legal conclusions that the government raises.

### D. Testimony as to Defendant's State of Mind.

The government argues that Dr. Murphy should be prohibited from testifying as to his opinions on the defendant's alleged mental state. It cites eleven opinions expressed in Dr. Murphy's report that go to the defendant's state of mind in his medical practice generally and prescription practices specifically. These include opinions that the defendant "acted in an effort to improve his patients' quality of life and alleviate their suffering," and that he "had ample information that was sufficient

for him to determine that the prescriptions were for a bona fide medical purpose and that potential benefits to the patients outweighed the potential risk." *Id.* at 15.

Federal Rule of Evidence 704(b) states, "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." And defense counsel stated in argument that "[Dr. Murphy]'s not going to opine on mental state." Pre-Trial Conf. Tr. 9, ECF No. 454. Dr. Murphy will not be permitted to state his opinions on the defendant's alleged mental state.

### E. Testimony as to Conclusory Opinions and Areas Outside His Expertise.

Lastly, the government seeks to prohibit testimony as to Dr. Murphy's "unsupported, blanket conclusory statements," of which the government provides examples with multiple quotes from his report for each example. Mot. Lim. Exclude Expert Test. 18, ECF No. 421. The examples include Dr. Murphy's conclusions that the defendant "acted morally or compassionately, or engaged in actions required by moral or compassionate practitioners," conclusions "about the impropriety of various standards and laws to regulate opioid use and abuse," and "[a]ny opinion as to the cause of death of [a patient]." *Id.* at 17, 19, ECF No. 421.

### IV. CONCLUSION.

I accept the general principles asserted by the government, which include that Dr. Murphy should not testify to matters outside his expertise, his belief as to the

defendant's mental state when prescribing for these patients, or his preferred policy positions on the regulation of opioid use or medical prescription.[1]

For the foregoing reasons, the government's Motion in Limine to Exclude and/or Limit Proposed Expert Testimony, ECF No. 421, is GRANTED in part and DENIED in part. Dr. Murphy's testimony will not be excluded entirely. As the government concedes, he may testify as to his opinion of whether the defendant provided controlled substances for a legitimate medical purpose, in an authorized manner, and within the bounds of the usual course of professional practice, Mot. Lim. Exclude Expert Test. 13, ECF No. 421, including as to the additional nine patients if a revised report is promptly provided. As more fully described above, he must not testify as to the defendant's alleged state of mind; matters of law or legal interpretation; or matters outside his area of expertise.

It is so **ORDERED**.

ENTER: November 24, 2024

/s/ JAMES P. JONES
Senior United States District Judge

---

[1] Similar restrictions have been imposed by other courts on Dr. Murphy's testimony as an expert witness for physicians charged under the Controlled Substance Act. *United States v. Taylor*, No. 6:21-CR-00013-GFVT-HAI, 2023 WL 3010156, at *3 (signed Apr. 18, filed Apr. 19 2023, E.D. Ky.); *United States v. La*, No. 3:22-CR-00163, 2022 WL 2707884, at *3 (M.D. Tenn. July 12, 2022).