CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED
May 29, 2025
LAURA A. AUSTIN, CLERK
BY: /s/ Kendra Campbell
     DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:17CR00027 |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **JOEL A. SMITHERS,** ) | JUDGE JAMES P. JONES |
| ) | |
| Defendant. ) | |

*Corey Hall, Assistant United States Attorney,* UNITED STATES ATTORNEY'S OFFICE, *Abingdon, Virginia, for the United States; Beau B. Brindley,* LAW OFFICES OF BEAU B. BRINDLEY, *Chicago, Illinois, for Defendant.*

The defendant, convicted by a jury, has filed a Motion for Judgment of Acquittal or New Trial, as well as an Emergency Motion for Extension of Time to File Post-Trial Motions. The government opposes both motions for untimeliness and on the merits. The matter has been fully briefed and is ripe for review.[1]

I. BACKGROUND.

In 2019, Joel Smithers, a former physician, was tried and convicted on 861 counts relating to his practice of prescribing opioids. Five years later, on his direct appeal, the Fourth Circuit vacated his convictions following the Supreme Court's decision in *Ruan v. United States*, 597 U.S. 450 (2022), and remanded his case for a

---

[1] I have dispensed with oral argument because the facts and allegations are adequately presented in the materials before the court, and argument would not significantly aid the decisional process.

new trial. *United States v. Smithers*, 92 F.4th 237, 240 (4th Cir. 2024). In December of 2024, Smithers was tried again and convicted of 467 counts, consisting of 466 unlawful distribution counts and 1 count of maintaining a place for the purpose of unlawful distribution.[2] Jury Verdict, ECF No. 520.

Smithers now moves for a judgment of acquittal pursuant to Rule 29, or in the alternative for a new trial pursuant to Rule 33. Fed. R. Crim. P. 29, 33. He argues that (1) the court's instructions to the jury misstated the elements of the offense required by *Ruan* and the mens rea required under 18 U.S.C. § 2(b) regarding willfulness; (2) certain limitations on one of his expert witnesses' testimony were an abuse of discretion; and (3) the willful blindness jury instruction was not supported by the evidence. He also contends that (4) the government's evidence was insufficient to convict.

The government argues that the defendant's motion is untimely because it was filed beyond the final extended deadline. The jury returned its verdict on December 21, 2024. I granted Smithers' motion for a 30-day extension to file his post-trial motions. On the deadline, Smithers filed a motion for another 30-day extension. He explained that he needed the full transcripts from the three-week trial to complete his post-trial motion, and he had ordered those transcripts on January 28, 2025, six

---

[2] Counts 1 and 101 were not involved in the trial, and the jury did not consider them.

days before the first extended deadline. A magistrate judge granted the extension and denied the government's motion for reconsideration.[3] I extended his time to file the post-trial motion until April 1, 2025. Smithers missed that deadline and did not request additional time until April 3, 2025, when he filed his Emergency Motion for Extension of Time. In that motion, he requested a new deadline of April 7, 2025, and ultimately filed the post-trial motion on April 9, 2025. He asserts that the delay was due to excusable neglect because it was caused by a health emergency in counsel's family.

## II. STANDARD OF REVIEW.

On review of a motion for acquittal under Rule 29, the court "must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision." *Burks v. United States*, 437 U.S. 1, 17 (1978). In the context of a criminal conviction, the Fourth Circuit has defined substantial evidence as "that evidence which 'a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *United States v. Newsome*, 322 F.3d 328, 333 (4th Cir. 2003) (quoting *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). The court should consider "circumstantial as well as direct evidence, and allow the

---

[3] Smithers still has not effected payment for the requested transcripts, an issue that has been addressed in multiple filings and hearings.

government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). In making this determination, I must not weigh the evidence or assess the credibility of witnesses, since that is the job of the jury. *Burks*, 437 U.S. at 17.

I may grant the defendant's motion for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A trial court has broad discretion to grant or deny a defendant's motion for a new trial. *United States v. Smith*, 451 F.3d 209, 216–17 (4th Cir. 2006). Motions for a new trial based upon the sufficiency of the evidence are generally disfavored and are granted "only when the evidence weighs heavily against the verdict." *United States v. Chavez*, 894 F.3d 593, 607 (4th Cir. 2018) (citation omitted). If the motion for a new trial is based on erroneous jury instructions, or other trial errors, the error is examined under the harmless error analysis. Fed. R. Crim. P. 52(a).

### III.    DISCUSSION.

#### A. Excusable Neglect.

I may extend the time for filing if a defendant failed to file a motion for judgment of acquittal by the deadline due to excusable neglect. Fed. R. Crim. P. 45(b)(1). "In determining whether a party has shown excusable neglect, a court will consider: (1) the danger of prejudice to the non-moving party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4)

whether the movant acted in good faith." *Colony Apartments v. Abacus Project Mgmt., Inc.*, 197 F. App'x 217, 223 (4th Cir. 2006) (unpublished). The reason for the delay is the most important factor. *Id*. Here, Smithers has established excusable neglect. There is little danger of prejudice to the government because the arguments raised in the motion have been previously addressed during the trial, and it has not been established that the length of the delay, while troubling, was due to bad faith. Most importantly, the health emergency in counsel's family justifies excusable neglect. I will therefore grant the defendant's Emergency Motion for Extension of Time so that the filing of the post-trial motion on April 9, 2025, is timely.

### B. The Jury Instructions Did Not Misstate *Ruan*.

*Ruan* clarified the "knowingly or intentionally" mens rea required by the Controlled Substances Act, under which Smithers was convicted for his opioid prescription practices. 21 U.S.C. § 841. The Supreme Court held that "[a]fter a defendant produces evidence that he or she was authorized to dispense controlled substances, the Government must prove beyond a reasonable doubt that the defendant knew that he or she was acting in an unauthorized manner, or intended to do so." *Ruan*, 597 U.S. at 454.

Smithers argues that the jury instructions misstated *Ruan*'s requirements. The relevant instruction read:

> Federal law makes it a crime for any person, except as authorized, to knowingly and intentionally distribute or dispense a

> controlled substance. The law authorizes a physician to distribute or dispense a controlled substance but only if it is for a legitimate medical purpose by the physician acting in the usual course of his professional practice.
>
> To find the defendant guilty of any of Counts Three through 862, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> First: That the defendant distributed or dispensed, or caused its distribution or dispensing, a Schedule II controlled substance in the Western District of Virginia;
>
> Second: That the defendant did so knowingly or intentionally;
>
> Third: That the defendant was not authorized to dispense or distribute the controlled substance, or to cause its distribution or dispensing, in that he did not have a legitimate medical purpose in the usual course of his professional practice; and
>
> Fourth: That the defendant knew he was acting in an unauthorized manner or intended to act in an unauthorized manner.

Instruction No. 17, ECF No. 515. Smithers argues that the instructions misused the word "manner," because "[t]here is a difference between knowingly acting in an 'unauthorized manner' and issuing a prescription that one *knows* to be unauthorized under the CSA." Post-Trial Mot. 3, ECF No. 559. This argument fails because *Ruan* held that "the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an *unauthorized manner*." *Ruan*, 597 U.S. at 468 (emphasis added).

Smithers also claims that the instructions permitted the jury to convict him if he "knew that he was issuing prescriptions outside of the norms expected in the

medical community, . . . even if he believed he was authorized to do so." Post-Trial Mot. 3, ECF No. 559. Smithers "objects to defining 'authorization' as contingent on compliance with CFR § 1306.04." *Id.* at 8. *Ruan* stated, however, that "[t]he Government, of course, can prove knowledge of a lack of authorization through circumstantial evidence. . . . And the regulation defining the scope of a doctor's prescribing authority does so by reference to objective criteria such as 'legitimate medical purpose' and 'usual course' of 'professional practice.'" *Ruan*, 597 U.S. at 467 (citing 21 C.F.R. § 1306.04(a)). The Supreme Court clearly looked to the regulation's definition of a doctor's authority that Smithers now argues should not control the definition of "authorization."

Smithers also argues that the instructions "mistakenly condition a physician's 'authorization' on compliance with objective norms in practice of pain management." Post-Trial Mot. 2, ECF No. 559. Yet *Ruan* stated: "As we have said before, the more unreasonable a defendant's asserted beliefs or misunderstandings are, *especially as measured against objective criteria*, the more likely the jury . . . will find that the Government has carried its burden of proving knowledge." *Ruan*, 597 U.S. at 467 (internal quotationmarks and citation omitted) (emphasis added). Clearly, *Ruan* permits the jury to consider "objective criteria" when determining whether a defendant knew his conduct was authorized. *Id.* And the Supreme Court highlighted examples of these "objective criteria," which include a "legitimate

medical purpose" and the "usual course" of "professional practice." *Ruan*, 597 U.S. at 467 (citing 21 C.F.R. § 1306.04(a)).

The language of the instruction here, when it explained what it means for conduct to be authorized, follows the Supreme Court's language closely and complies with the mens rea requirements of *Ruan*.

### C. The Jury Instructions Correctly Stated the Mens Rea Requirement of 18 U.S.C. § 2.

Smithers next argues that the jury instructions should have incorporated a willfulness requirement as part of its inclusion of the cause requirement in 18 U.S.C. § 2(b). The government charged Smithers under § 2(b) for the distribution counts, which included Counts 3 through 862 in the Second Superseding Indictment. Under § 2(b), "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." Smithers argues that he was acquitted of the distribution counts when he held in-person visits with the patient and convicted when he did not hold an in-person visit for each prescription, so the jury could have relied on the "caused the distributing or dispensing" language to convict. Post-Trial Mot. 10, ECF No. 559. He claims that the error in not including a willfulness instruction was therefore not harmless.

"[J]ury instructions are not evaluated in 'isolated segments,' but instead analyzed 'as a whole.'" *Smithers*, 92 F.4th at 250–51 (quoting *United States v.*

*Cropp*, 127 F.3d 354, 360 (4th Cir. 1997)). And, using Smithers's argument, "to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'" Post-Trial Mot. 9–10 (internal quotation marks omitted) (quoting *Bryan v. United States*, 524 U.S. 184, 191–92 (1998)). The instructions that included language on causing the distributing or dispensing of a controlled substance also included language about the defendant knowing that the conduct was unlawful. For example, Instruction No. 24 stated that "[t]he burden is on the government to prove, beyond a reasonable doubt, that the defendant *knowingly or intentionally* distributed or dispensed or *caused to be distributed or dispensed* controlled substances . . . ." ECF No. 515 (emphasis added). Instruction No. 17 also limited the "causing" language with a knowledge requirement, as included above, along with multiple other instructions. *See id.* at Instruction Nos. 14, 16, 18, 23.

The instructions thoroughly tied the "causing the distributing or dispensing" language to the "knowingly or intentionally" mens rea. There was no error by not including a willfulness instruction after incorporating the § 2(b) cause requirement.

### D. The Limits on Dr. Murphy's Testimony Were Not an Abuse of Discretion.

Smithers next argues that his expert, Dr. Murphy, was erroneously prevented from testifying that medical ethics would permit a doctor to "violate a regulation if that doctor felt that the regulation was unjust and it was in the best interest of that

patient." Post-Trial Mot. 11, ECF No. 559. I previously ruled on the government's motion to exclude Dr. Murphy's testimony on multiple grounds. *United States v. Smithers*, No. 1:17CR00027, 2024 WL 4880398, at *3–4 (W.D. Va. Nov. 24, 2024). One of those grounds was that Dr. Murphy must not testify as to his opinions on legal issues, including "whether the defendant was required to follow the law, or that any deviation from the law was ethically permissible because professional health care standards may conflict with the law." *Id.* at *3 (internal quotation marks and citation omitted).

"Legal conclusions are beyond the proper role of an expert witness and would supplant the jury's role in evaluating and determining the facts." *Id.* at *4 (citing *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002) (noting that "[e]xpert testimony that merely states a legal conclusion is less likely to assist the jury in its determination")). For the same reason that I granted the government's motion in limine with respect to Dr. Murphy's testimony as to conclusions of law, I must reject Smithers's argument that Dr. Murphy should have been able to testify to the ability of doctors to ethically violate medical regulations.

### E. The Willful Blindness Instruction Was Supported by the Evidence.

Smithers argues that the jury should not have been instructed on willful blindness. He claims that it is inconsistent with *Ruan*'s specific intent requirement and the government did not present evidence showing that he took any deliberate

-10-

action to avoid learning that his patients and employees were lying to him. He argues that the evidence the government used to support its willful blindness argument at trial went to Smithers's knowledge and not any active attempt to turn a blind eye.

"[W]here the evidence presented in the case supports both actual knowledge on the part of the defendant and deliberate ignorance, a willful blindness instruction is proper." *United States v. Abbas*, 74 F.3d 506, 513 (4th Cir. 1996). Here, evidence was presented that certain patients arrived together in groups after traveling for multiple hours; that Darryl Williams led some of these groups and made bulk payments to Smithers in exchange for him writing prescriptions and mailing them to Williams; and that patients were prescribed large dosages of controlled substances. As the government points out, willful blindness instructions have been appropriately given in similar situations where "a large percentage of patients . . . drove for hours in large groups" and "very high dosages of narcotics" were prescribed. *United States v. Leman*, 574 F. App'x 699, 706 (6th Cir. 2014) (unpublished). The evidence introduced here adequately supported the willful blindness instruction. "Finally, any error in giving a willful blindness instruction is harmless 'where there is sufficient evidence in the record of actual knowledge on the defendant's part.'" *United States v. Ravenell*, 66 F.4th 472, 491 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 1344 (2024) (quoting *United States v. Farrell*, 921 F.3d 116, 146 (4th Cir. 2019)). The willful blindness instruction was properly supported by the evidence.

F.  The Government Did Not
Present Insufficient Evidence.

Lastly, Smithers argues that the government presented insufficient evidence to establish either the mens rea or the act of the charged offenses under Rule 29.  He argues in the alternative that, for the same reasons, he should be granted a new trial under Rule 33.  However, after carefully reviewing the trial record, I conclude that the jury was presented with sufficient evidence to support its verdicts of guilt.

The government introduced substantial evidence that Smithers knew or intended to act without a legitimate medical purpose in the usual course of his professional practice in prescribing controlled substances, knowing he was acting in an unauthorized manner.  Smithers argues that "the determination to convict or acquit was based entirely on whether there was an in person visit or not."  Post-Trial Mot. 21, ECF No. 21.  But the government contends that the jury found Smithers guilty of certain counts even when there appeared to be an in-person visit.  Furthermore, in addition to the evidence described above, the government's expert witness testified at trial over a period of three days as to all of the patients named in the Second Superseding Indictment and their charged prescriptions.  He reviewed all of the patient files for those in the Indictment and testified that none of the prescriptions were issued pursuant to the practice of medicine.  Trial Tr. Dec. 10–12, 2024, at 10, ECF No. 564.  The government presented substantial evidence supporting the jury's verdict, and Smithers's motion must be denied.

IV. CONCLUSION.

For the foregoing reasons, the defendant's Emergency Motion for Extension of Time to File Post Trial Motions, ECF No. 556, is GRANTED, and the Motion for Judgment of Acquittal or New Trial, ECF No. 559, is DENIED.

It is so **ORDERED**.

ENTER: May 29, 2025

/s/  JAMES P. JONES
Senior United States District Judge